(No. 56889.—)

LEON HORATH, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Baldwin and Associates, Appellee).

*Opinion filed May 27, 1983.*

Warren E. Danz, P.C., of Peoria (Richard G. Leiser, of counsel), for appellant.

Dennis S. O'Brien, of Livingstone, Mueller, Gunning & Davlin, of Springfield, for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal is from a judgment of the circuit court of De Witt County confirming findings of the Industrial Commission. In its decision, the Commission affirmed an arbitrator's finding that there was no causal connection between the complaints of Leon Horath, the claimant, of injuries to his cervical spine, left shoulder and neck, and an accident which occurred at work on June 25, 1979. The claimant appealed directly to this court under Rule 302(a)(2) (73 Ill. 2d R. 302(a)(2)).

The claimant filed an application for adjustment of claim on August 10, 1979. In the application, he stated that he was 42 years of age, had been injured in an accident that occurred in the course of his employment on June 25, 1979, and as a result was totally disabled.

At the arbitrator's hearing, Horath testified that he was employed as a laborer at Baldwin & Associates (Baldwin) on June 25, 1979. Shortly before midnight on June 25 he was "stripping forms" on the top of a com-

pany building. In so doing, he and other workers were holding ropes that were attached to a steel form. The claimant and other workers held the ropes in order to stabilize the forms as they were lowered by a crane.

As the claimant was holding a rope that was positioned across his back, wind blew the form to which the rope was attached and caused the form to rotate. When the wind blew the form, the rope pulled him forward onto a stack of steel bars.

When he got up, he noticed pain in his back, neck, left arm and left leg. He visited the company nurse, who gave him aspirin. The claimant was admitted to St. Joseph's Hospital in Bloomington the next day. At St. Joseph's he was treated by Dr. John Wright and Dr. O. Deneen. He was kept in traction for the next seven or eight days, and was discharged on July 7, 1979. The pain persisted during the hospitalization.

On August 6, 1979, he consulted Dr. J. M. Sethi for a testicular problem. At that time, the claimant complained of pain in his neck and left side of his body. He had pain in the left shoulder. Dr. Sethi treated the claimant but apparently not for the pain in the neck and shoulder. He saw Dr. Sethi once more on August 31, 1979.

He saw Dr. M. L. Mehra on September 28, 1979, and made the same complaints as to pain. Dr. Mehra prescribed a collar. He consulted Dr. Mehra again, and was admitted to St. John's Hospital in Springfield on January 9, 1980. On January 10, Dr. Robert Hayner surgically removed a cervical disc.

At the time of the hearing, the claimant was still under Dr. Mehra's care. He testified that no further surgery was scheduled and that he could perform ordinary household chores. He was still experiencing pain, however, in his left leg, left arm, spine and neck, though the pain was not as severe as he experienced after the acci-

dent. He complained, too, of numbness in his left arm and hand. He still was using a neck brace, but not a back brace.

The claimant denied telling a contrary version of the accident and his injuries to Baldwin's nurse, Dr. Hayner (who operated on him) or the doctors at St. Joseph's Hospital, where he was first treated after the accident. He also denied reinjuring himself between June 25, 1979 and August 6, 1979, when he first visited Dr. Sethi.

In a report dated November 12, 1980, Dr. Mehra stated that the claimant was under his care for a cervical disc injury resulting from the accident. Because of that injury, the doctor stated, the claimant remained totally disabled.

According to other physicians' reports admitted at the hearing, however, the claimant did give different versions of his accident. The report of Dr. Deneen, who treated the claimant at St. Joseph's Hospital after the accident, stated that "the [claimant] stated that on 6/25 he was lifting some heavy lumbar [sic] and felt something stab in his back." According to the report of Dr. Wright, who was called in at St. Joseph's for an orthopedic consultation, "[the claimant] said he got hurt on June 25th, at the Baldwin Associates, Clinton, Illinois. *** He was doing his usual work, carrying wood forms and stacking them. On one instance, he turned and twisted, causing pain. He said he was unable to finish his day, and the folks had to help him on home." According to the report of an examination by Dr. William S. Coxe, and the office notes of Dr. Sethi, neither of whom examined the claimant before August 6, 1979, the patient described his accident to them as he did at the hearing.

Too, in the medical evidence there is no indication of any complaints of pain in the neck or left arm before the August 6, 1979, visit to Dr. Sethi. The records at St. Joseph's, as in fact did the claimant's application for ad-

justment of claim, show complaints only of leg and low back pain, and Dr. Wright's diagnosis was "Acute lumbosacral strain associated with traumatic sciatic neuritis of the left leg." The radiological consultation report by Dr. Raymond W. Yin at St. Joseph's stated: "Routine views of the lumbosacral spine show normal findings. There is normal intervertebral disk spacing. Bone density is normal and the apophyscal joints show no deformity." A radiological report of January 9, 1980, stated that there were degenerative changes in the lower cervical spine.

In the report of Dr. Coxe, dated July 5, 1980, the doctor stated that he was unable to explain the claimant's complaints as to his lower back on the basis of his examination and review of myelograms made during the preceding six months. Dr. Coxe did state that in the accident as described by the claimant "the rope might have borne down on the left supraclavicular region and the patient might have sustained some stretch of his plexus which would produce a rather more diffuse tingling and numbness in the entire arm ***." He could not explain, however, the "relationship of these complaints to the ones in the lower extremity."

In the August 6, 1979, notes of Dr. Sethi, in which the claimant does complain of pain in the left shoulder, Dr. Sethi also noticed multiple bruises and a large healing bruise on the left iliac crest. In Dr. Sethi's notes of his August 31, 1979, examination, the doctor stated that he believed the claimant probably had spinal injury, but the physician also thought that the claimant was "exaggerating tremendously," and made "changing complaints."

The arbitrator found that the claimant did sustain accidental injury arising out of and in the course of his employment with Baldwin. The injury resulting from the accident, however, was a low back injury, he said, which was not causing the plaintiff's disability at the time of

the hearing, and for which $17,412.36 had already been paid by the employer. The arbitrator found that the claimant did not show that his condition of ill-being with regard to the cervical spine and left shoulder were causally connected to the accident.

The claimant testified before the Industrial Commission on review of the arbitrator's decision. He stated that the pain in his arm, leg, lower back and neck persisted. He remained under Dr. Mehra's care, and after the arbitrator's hearing, he was examined by Dr. Gordon Schultz.

Evidence depositions of Dr. Mehra and Dr. Schultz were admitted before the Commission. Dr. Mehra stated that when he first saw the claimant on September 28, 1979, the claimant complained of pain in the neck and left arm. He said that he had been experiencing the pain for the past three months. Also, "he complained vaguely of low back pain and some left leg pain."

Dr. Mehra explained that the pain worsened during later examinations. In his opinion, the claimant was suffering from cervical disc syndrome throughout the treatments, and he still suffered from that problem or from scar tissue. In response to a hypothetical question that assumed the accident as described by the claimant at the arbitrator's hearing, the doctor gave an opinion that the cervical disc syndrome was related to the accident. The doctor said he had no other way to explain it. The claimant was never sent back to work, the physician explained, because he continued to complain of pain in his neck and arm.

Dr. Mehra made clear that he was basing his opinion on the facts related to him by the claimant. He was relying upon the claimant's representation in September 1979 that he had been experiencing pain in the neck and left arm for three months, and that he had been struck in the jaw in the accident of June 25. Dr. Mehra did not re-

ceive any report from Dr. Sethi. Dr. Mehra admitted that the disc problem, which was in the neck, could have been the complication of a subsequent injury if such an injury occurred. The neck disc problem, in fact, could be the delayed complication of an injury of any kind. Dr. Mehra never treated the claimant's lower back.

Dr. Schultz gave an opinion based upon his examination of the claimant and X rays. The doctor said, "He had some arthritic changes in his lower back with some evidence of a nerve root compression at the L5 level on the left and in his cervical spine he had some severe changes with narrow disk spaces and arthritic changes at the C5, 6 and C7 levels." The X rays showed minimal degeneration in the lumbar spine due to arthritic changes. The lumbar spine was normal except for arthritic changes in the lower back.

In response to a hypothetical question that assumed the accident as described at the arbitrator's hearing and immediate pain in his neck, left arm, low back and left leg, Dr. Schultz gave an opinion that the claimant's condition of ill-being was caused by the accident of June 25.

Upon cross-examination, Dr. Schultz stated that other types of traumatic accidents, such as an auto accident or a fall subsequent to June 25, 1979, could have caused the condition too. Dr. Schultz did not consult the medical reports of other physicians. His only information as to the prior medical history of the claimant was given to him by the claimant.

Dr. Schultz believed that the claimant was not able to work, and that his condition was permanent. The cause of the disability, the doctor stated, was cervical injury. The back problem would interfere only with heavy or repetitive lifting.

The Commission, as we have stated, affirmed the decision of the arbitrator that there was no causal connection between the claimant's state of ill-being and the ac-

cident of June 25, 1979. In its opinion, the Commission pointed out that the history and complaints given by the claimant to the physicians treating him during the initial period of treatment all indicated low back injury, as did the treatment prescribed by the doctors. The first complaints of cervical and left arm pain were not made until he was examined on August 6, 1979, six weeks after the accident at work, at which time Dr. Sethi observed multiple bruises and a large healing bruise on the left iliac crest, the existence of which the claimant denied at arbitration. Dr. Sethi last saw the claimant on August 31, 1979, when he concluded that the claimant was "exaggerating tremendously," and made "changing complaints." When the claimant saw Dr. Mehra on September 28, 1979, he complained of neck pain that he said had persisted for three months, but he only incidentally and vaguely referred to low back and left leg pain.

We judge that the circuit court did not err in confirming the decision of the Commission. In a workmen's compensation proceeding, the claimant has the burden of showing by a preponderance of credible evidence that his injury arose out of and in the course of employment, which requires a showing of causal connection. (*Rosenbaum v. Industrial Com.* (1982), 93 Ill. 2d 381, 386; *Associated Vendors, Inc. v. Industrial Com.* (1970), 45 Ill. 2d 203, 205.) It is the function of the Commission to decide the question of causation, and its decision will be overturned only if it is contrary to the manifest weight of the evidence. *Goldsamt v. Industrial Com.* (1982), 93 Ill. 2d 115, 120-21; *O'Neal Brothers Construction Co. v. Industrial Com.* (1982), 93 Ill. 2d 30, 37.

We cannot say that the decision here was contrary to the manifest weight of the evidence. The finding as to causation involved the credibility of the claimant. There was evidence that the claimant gave conflicting versions of the accident and the injuries. Too, there was evidence

in Dr. Sethi's examination that the claimant had sustained non-work-related injuries after the complained-of accident.

The claimant contends that the Commission erred by not accepting the medical opinions that the claimant's condition of ill-being at the time of the hearing was caused by the accident of July 25, 1979. The claimant says there is no medical evidence to the contrary. The medical opinions relied upon by the claimant, however, were based upon the description of the accident and the injury he gave at the hearing. His assertion of immediate and persistent pain in the shoulders and neck was contradicted by other evidence, and a subsequent injury was also indicated. It is the Commission's role, not ours, to judge the credibility of witnesses. *Goldsamt v. Industrial Com.* (1982), 93 Ill. 2d 115, 121; *White v. Industrial Com.* (1982), 88 Ill. 2d 523, 526.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*