TWICE OVER CLEAN, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Howard Haulk, Appellee).

Third District (Industrial Commission Division) No. 3—02—0353WC

Opinion filed March 26, 2003.—Rehearing denied April 25, 2003.

HOLDRIDGE, J., specially concurring.
GOLDENHERSH, J., dissenting.

Allen C. Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

R. Wayne Harvey and J. Kevin Wolfe, both of Harvey & Stuckel, Chtrd., of Peoria, for appellee.

JUSTICE JACK O'MALLEY delivered the opinion of the court:

On January 2, 1997, Howard Haulk experienced a heart attack after completing that day's work for his employer, Twice Over Clean, Inc. (employer). Claimant filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). The arbitrator determined that claimant sustained a compensable accident and awarded claimant medical expenses, temporary total disability benefits, and permanent partial disability benefits. The Industrial Commission (Commission) affirmed and adopted the arbitrator's decision, with one commissioner dissenting. The circuit court confirmed the Commission's decision. We reverse.

The following facts were adduced at the hearing before the arbitrator. Claimant testified that he worked for employer as a laborer. On January 2, 1997, he was working in Minneapolis, Minnesota, removing asbestos from an old, disused building. On January 2, 1997, claimant began working there at about 7 a.m. and completed work at 4:30 or 5:30 p.m. Claimant testified that the building was unheated and that the inside temperature of about 5° Fahrenheit was colder than the outside temperature of about 15° to 20° Fahrenheit.

Claimant testified that he was engaged in removing asbestos that had previously been collected into large bags, each of which weighed around 40 to 45 pounds. Claimant testified that there were about 500 bags that had to be placed into a commercial Dumpster, which was accessed by walking down several stories and across 40 or 50 feet outside the building. Claimant testified that he conducted the cleanup of the building while wearing a full respirator and protective clothing.

Claimant testified that he began to experience pains in his chest,

neck, and left shoulder in the middle of the afternoon, around 2:30 p.m. He ignored the pains and, when they were more intense, sat down for a few minutes until the pains abated sufficiently to allow him to continue working. When claimant ended work and returned to his hotel, he did not feel like eating dinner. At about 7:30, claimant testified that his pains returned once again, but this time, claimant broke into a cold sweat and "got the dry heaves." At that point, claimant requested an ambulance and was taken to the hospital, where it was established that claimant had experienced an acute inferior wall myocardial infarction.

After treatment in Minneapolis, claimant was discharged and returned to Peoria, where he was placed under the care of Dr. Cohen, his family physician, and Dr. Gold, a cardiologist.

Dr. Cohen testified in an evidence deposition that, based on the history related by claimant, the myocardial infarction was caused by the physical activity in which he engaged on January 2, 1997. Employer retained Dr. Wilner, a cardiologist, to review claimant's medical records. Dr. Wilner concluded that claimant's work activities did not cause claimant's myocardial infarction and pointed to enzymatic studies that he interpreted to demonstrate that plaintiff's heart attack did not occur during the afternoon while he was working, but after he had completed his work for the day. On cross-examination, Dr. Wilner conceded that the results of the enzymatic studies could also be interpreted consistently with a heart attack occurring during claimant's working hours.

The arbitrator concluded that claimant had experienced an accidental injury arising out of and in the course of his employment and awarded claimant medical expenses, temporary total disability benefits, and permanent partial disability benefits (the amounts of which are not disputed on appeal). On review, the Commission affirmed the arbitrator's decision, but one commissioner dissented, finding that claimant had not proved a causal relationship between his employment and his heart attack. The trial court confirmed the Commission's decision and employer timely appeals.

■ On appeal, employer argues that the Commission's decision was against the manifest weight of the evidence on the issue of causation. The claimant is required to establish the elements of his right to compensation under the Act. *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 326 Ill. App. 3d 438, 443 (2001). For an accidental injury to be compensable under the Act, the claimant must show that the injury arose out of and in the course of his employment. *Wal-Mart*, 326 Ill. App. 3d at 443-44. Such a showing requires that a causal connection be demonstrated. *Horath v. Industrial Comm'n*, 96 Ill. 2d 349, 356

(1983). The Commission is charged with determining the question of causation, and we will disturb the Commission's decision only if it is contrary to the manifest weight of the evidence. *Horath*, 96 Ill. 2d at 356.

It is well established that preexisting heart disease will not preclude a workers' compensation award for a heart attack where work-related stress contributed to the heart attack. See, *e.g., City of Des Plaines v. Industrial Comm'n*, 95 Ill. 2d 83, 88-89 (1983). However, the "one exception to this rule is when the heart disease is so far gone that any stress, even the most ordinary exertion, will bring on the \*\*\* heart attack," the employer is not liable "because it is only coincidence that the attack occurred at work rather than somewhere else." *Doyle v. Industrial Comm'n*, 86 Ill. 2d 544, 550 (1981). This court has recently confirmed this principle, holding that "a claimant is not entitled to compensation, regardless of whether his condition of ill-being was caused by work-related aggravation of a preexisting condition, if his physical condition has so deteriorated that his condition of ill-being could have been produced by normal daily activity." *Sisbro, Inc. v. Industrial Comm'n*, 327 Ill. App. 3d 868, 873 (2002), *appeal allowed*, 201 Ill. 2d 616 (2002). Thus, even if the Commission were to have found that a claimant's illness or accident were caused or aggravated by conditions at his work, the claimant could not recover if his illness or condition were so precarious that any normal daily activity could have triggered it. Here, therefore, if the evidence demonstrated that claimant's heart attack could have been caused by any normal daily exertion, then the exceptions enunciated in *Doyle* and *Sisbro* would apply to bar claimant's recovery of workers' compensation benefits.

Our review of the record demonstrates that this cause is on all fours with *Sisbro* and presents an even stronger factual scenario to which to apply the exception. There, the claimant experienced joint degeneration related to his diabetic condition. His doctor opined that the degeneration would be inevitable as a result of his condition and that anything, even normal walking, would cause the degeneration seen in the claimant's foot. *Sisbro*, 327 Ill. App. 3d at 870. The doctor maintained, however, that the claimant's injury had been caused as he stepped into a pothole while working. *Sisbro*, 327 Ill. App. 3d at 870. This court determined that the normal daily activity exception applied where the evidence showed that the claimant's condition of ill-being could have arisen from any activity, no matter how slight or mundane. *Sisbro*, 327 Ill. App. 3d at 879.

Here, it is undisputed that claimant experienced a myocardial infarction. What is disputed is the time at which it occurred. However,

this dispute is immaterial because, even assuming that claimant's heart attack occurred at work and was caused by employment-related physical stress, the issue remains whether claimant's condition was "so far gone that any stress, even the most ordinary exertion, will bring on the *** heart attack." *Doyle*, 86 Ill. 2d at 550.

Here, Dr. Cohen testified that claimant's right coronary artery was 90% occluded. The following exchange then occurred:

"Q. [by Employer's Counsel]: And a person with that degree of occlusion, would you agree that any activity or no activity could put sufficient stress on the heart to result in a myocardial infarction?

A. [by Dr. Cohen]: Yes.

Q. A person with that degree of coronary artery disease, it's not uncommon for them to experience a myocardial infarction while at rest, is that true?

A. Yeah. Anybody can experience a myocardial infarction at rest really.

Q. With that degree of occlusion, you're basically—a patient may not have any symptoms even with that degree of occlusion until the myocardial infarction actually occurs, is that true?

A. It would be unlikely. Certainly there are patients who denied any symptoms up until that happened.

Q. A person with that degree of occlusion is basically a heart attack waiting to happen, would you agree?

A. Yeah."

Dr. Cohen's testimony establishes that claimant's heart condition was so far gone that any stress, even that of ordinary daily activity, could have brought about claimant's heart attack. As a result, therefore, claimant is barred from recovery under the Act. See *Sisbro*, 327 Ill. App. 3d at 878-79.

Claimant argues that the Commission's factual determination of causation is entitled to deference and that we may not substitute our judgment for that of the Commission. While claimant correctly states the law, he overlooks the fact that the Commission did not employ the proper legal analysis to the questions at hand. The Commission failed to consider the normal daily activity exception to the rule that the employer must take the employee as it finds him, which was enunciated in *Doyle* and *Sisbro*. Employing the correct legal standard results in the conclusion that the daily activity exception applies to foreclose claimant from receiving benefits.

Claimant also argues that our review of this matter is limited to deciding whether sufficient evidence exists to support the Commission's decision, quoting *Efremidis v. Industrial Comm'n*, 308 Ill. App. 3d 415, 422 (1999). We find *Efremidis* to be distinguishable. There, the

court was considering whether the Commission's denial of benefits was against the manifest weight of the evidence. The claimant had a heart attack while working and conflicting medical and expert testimony was presented. The Commission expressly noted that it found the employer's medical expert to be more credible than the claimant's. The court noted that this credibility determination was to be accorded deference on review. *Efremidis*, 308 Ill. App. 3d at 422-23. We note, however, that the daily activity exception was not raised in *Efremidis*. The result in *Efremidis*, however, is consistent with the application of the daily activity exception (even though there was medical testimony that the claimant there was a heart attack "waiting to happen," the court failed to complete the analysis). Thus, *Efremidis* does not control our review of this matter.

Claimant also cites to *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187 (2002), seeking to define our review of the Commission's decision in this matter. *Baggett* quoted *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 17-18 (1977), in setting forth the standard of review in cases in which the claimant's injury was caused by a combination of mental and physical stresses:

> " 'An accidental injury can be found to have occurred, even though the result would not have obtained had the employee been in normal health. [Citation.] If an employee's existing physical structure gives way under the stress of his *usual labor*, his death is an accident which arises out of his employment. To come within the statute the employee need only prove that some act or phase of the employment was *a* causative factor of the resulting injury.
>
> The mere fact that an employee might have suffered a fatal heart attack, even if not working, is immaterial, for the question before the Commission is whether the work that was performed constituted a causal factor. [Citation.] The *sole limitation* to the above general rule is that where it is shown the employee's health has so deteriorated that *any normal daily activity* is an overexertion or where it is shown that the *activity engaged in presented risks no greater than those to which the general public is exposed*, compensation will be denied. [Citations.]' (Emphasis added.) [Citation.]"
> *Baggett*, 201 Ill. 2d at 195-96.

In *Baggett*, however, there was no issue as to whether either of the exceptions to the general rule applied. There was no issue that the claimant's health was so deteriorated that even normal daily activity was an overexertion. Here, by contrast, claimant's own physician agreed that claimant was a heart attack waiting to happen and that claimant could have suffered a heart attack even while at rest. Thus, while *Baggett* provides an accurate statement of the law regarding the normal daily activity exception to the general rule that an employer

must take its employee as it finds him, it does not apply that rule. As a result, *Baggett* is inapposite to the facts of this case.

Because the Commission failed to apply the normal daily activity exception to the facts of this case, it utilized the incorrect legal standard in reaching its decision in this matter. For the foregoing reasons, then, we reverse the judgments of the circuit court of Peoria County and the Commission.

Reversed.

McCULLOUGH, P.J., and HOFFMAN, J., concur.

JUSTICE HOLDRIDGE, specially concurring:
The majority supports its opinion by citing *Sisbro, Inc. v. Industrial Comm'n*, 327 Ill. App. 3d 868 (2002), *appeal allowed*, 201 Ill. 2d 616 (2002). In *Sisbro*, as in the instant case, the arbitrator's finding of causation was affirmed by the Industrial Commission (Commission) and confirmed by the circuit court, but this court reversed the finding. This court based its reversal on a well-established exception to the causation rule: any daily activity could have caused the claimant's condition of ill-being. Although I dissented in *Sisbro*, I believe the instant case presents distinguishable facts warranting application of the causation exception.

In *Sisbro* the claimant's doctor testified that claimant's condition of ill-being was caused by, and did not precede, his industrial accident. In giving this testimony, the doctor carefully considered the claimant's preexisting medical condition—which the employer argued was a basis for applying the causation exception. The record indicated that the Commission relied on the doctor's testimony in rejecting the employer's argument. In the instant case, however, no such reliance is possible because testimony from the claimant's doctor shows that the exception is applicable. Doctor Cohen testified that Haulk's heart condition had deteriorated to a point where "any activity or no activity" could have caused his heart attack. The doctor further agreed that Haulk was "a heart attack waiting to happen."

As the majority acknowledges, compared to *Sisbro*, the instant case presents "[a] stronger factual scenario to which to apply the exception." 337 Ill. App. 3d at 808. I agree and thus specially concur.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent. Justice Rarick's dissent in *Sisbro, Inc. v. Industrial Comm'n*, 327 Ill. App. 3d 868 (2002), succinctly and completely points out the flaws in the majority's position in that case.

His dissent in *Sisbro*, joined in by Justice Holdridge (who, in this case, files a special concurrence), equally applies here. The flaws pointed out by the *Sisbro* dissent have neither mellowed nor disappeared with the passage of time. Accordingly, I adopt the reasoning of Justice Rarick's *Sisbro* dissent as the basis for my dissent in the instant case.