TWICE OVER CLEAN, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Howard Haulk, Appellee).

Third District (Industrial Commission Division)   No. 3—02—0353WC

Opinion filed May 6, 2004.—Rehearing denied June 7, 2004.

GOLDENHERSH, J., dissenting.

Allen C. Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

R. Wayne Harvey and J. Kevin Wolfe, both of Harvey & Stuckel, Chtrd., of Peoria, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Following a heart attack, claimant, Howard Haulk, filed an application for workers' compensation benefits pursuant to the Workers'

Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). Following the arbitration of claimant's claim, the arbitrator determined that claimant sustained a compensable accident and awarded claimant medical expenses, temporary total disability benefits, and permanent partial disability benefits. Employer, Twice Over Clean, appealed the arbitrator's award, and the Industrial Commission (Commission) affirmed and adopted the arbitrator's decision, with one commissioner dissenting. Employer appealed the Commission's decision and the circuit court confirmed the Commission's decision. Employer appealed to this court and we reversed, finding that claimant was barred from recovering benefits due to the operation of the normal daily activity exception. *Twice Over Clean, Inc. v. Industrial Comm'n*, 337 Ill. App. 3d 805 (2003). Claimant petitioned for leave to appeal to the supreme court. Claimant's petition was denied, but the supreme court, in the exercise of its supervisory authority, directed this court to vacate its judgment and to reconsider it in light of *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193 (2003) (*Sisbro II*), which overtured our decision in *Sisbro, Inc. v. Industrial Comm'n*, 327 Ill. App. 3d 868 (2002) (*Sisbro I*). We therefore vacate our previous decision and submit this in its place, once again reviewing the evidence adduced before the Commission, but this time in light of our supreme court's decision in *Sisbro II*, and again we reverse the Commission's decision.

The following facts were adduced at the hearing before the arbitrator. Claimant testified that he worked for employer as a laborer. On January 2, 1997, he was working in Minneapolis, Minnesota, removing asbestos from an old, disused building. On January 2, 1997, claimant began working there at about 7 a.m. and completed work at 4:30 or 5:30 p.m. Claimant testified that the building was unheated and that the inside temperature of about 5° F. was colder than the outside temperature of about 15° to 20° F.

Claimant testified that he was engaged in removing asbestos that previously had been collected into large bags, each of which weighed around 40 to 45 pounds. Claimant testified that there were about 500 bags which had to be placed into a commercial Dumpster, which was accessed by walking down several stories and across 40 or 50 feet outside of the building. Claimant testified that he conducted the cleanup of the building while wearing a full respirator and protective clothing.

Claimant testified that he began to experience pains in his chest, neck, and left shoulder in the middle of the afternoon, around 2:30 p.m. He initially ignored the pains and, when they were more intense, sat down for a few minutes until the pains abated sufficiently to allow him to continue working. When claimant ended work and returned to

his hotel, he did not feel like eating dinner. At about 7:30, claimant testified that his pains returned once again, but this time, claimant broke into a cold sweat and "got the dry heaves." At that point, claimant requested an ambulance and was taken to the hospital, where it was established that claimant had experienced an acute inferior wall myocardial infarction.

After treatment in Minneapolis, claimant was discharged and returned to Peoria, where he was placed under the care of Dr. Cohen, his family physician, and Dr. Gold, a cardiologist.

Dr. Gold did not testify. However, Dr. Cohen testified in an evidence deposition that, based on the history related by claimant, the myocardial infarction was caused by the physical activity in which he engaged on January 2, 1997. On cross-examination, however, Dr. Cohen admitted that he did not know that claimant's coronary arteries were 90% occluded and that this information would have been significant in rendering his opinion. Dr. Cohen admitted that, given this degree of occlusion, "any activity or no activity could put sufficient stress on the heart to result in a myocardial infarction." Dr. Cohen further admitted that, based on this information, claimant was a "heart attack waiting to happen."

Employer retained Dr. Wilner, a cardiologist, to review claimant's medical records. Dr. Wilner concluded that claimant's work activities did not cause claimant's myocardial infarction and pointed to enzymatic studies that he interpreted to demonstrate that plaintiff's heart attack did not occur during the afternoon while he was working, but after he had completed his work for the day. On cross-examination, Dr. Wilner conceded that the results of the enzymatic studies could also be interpreted consistently with a heart attack occurring during the hours claimant was working. A number of medical records also were presented to the Commission. These records indicate that claimant told the emergency physicians that he had been experiencing some chest pains during the preceding month, and not solely on the day of January 2, 1997.

The arbitrator concluded that claimant had experienced an accidental injury arising out of and in the course of his employment and awarded claimant medical expenses, temporary total disability benefits, and permanent partial disability benefits (the amounts of which are not disputed on appeal). On review, the Commission affirmed and adopted the arbitrator's decision, but one commissioner dissented, on the grounds that claimant had not proved a causal relationship between his employment and his heart attack. The trial court confirmed the Commission's decision. Employer appealed and we reversed. *Twice Over Clean*, 337 Ill. App. 3d 805. Claimant

petitioned the supreme court for leave to appeal; claimant's petition was denied but the supreme court directed us to reconsider our decision in this cause in light of its decision in *Sisbro II*, 207 Ill. 2d 193.

On appeal, employer argues that the Commission's decision was against the manifest weight of the evidence on the issue of causation. First, employer argues that the Commission erroneously accepted claimant's and Dr. Cohen's testimony regarding causation. Second, employer argues that, irrespective of causation, the normal daily activity exception should apply to bar claimant's recovery.

■ In our prior decision we did not address whether claimant's work activities contributed to his infarction. We held that claimant was not entitled to compensation irrespective of causation because, as his own physician admitted, his condition of ill-being was so deteriorated that any activity, work-related or not, might be sufficient to cause an infarction. We relied on our statement in *Sisbro I* that "a claimant is not entitled to compensation, regardless of whether his condition of ill-being was caused by work-related aggravation of a preexisting condition, if his physical condition has so deteriorated that his condition of ill-being could have been produced by normal daily activity." *Sisbro I*, 327 Ill. App. 3d at 873. We derived the rule in *Sisbro I* from the following statement by the supreme court in *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 17-18 (1977):

> "The mere fact that an employee might have suffered a fatal heart attack, even if not working, is immaterial, for the question before the Commission is whether the work that was performed constituted a causal factor. [Citation.] The *sole limitation* to the above general rule is that where it is shown the employee's health has so deteriorated that any normal daily activity is an overexertion, *or* where it is shown that the activity engaged in presented risks no greater than those to which the general public is exposed, compensation will be denied." (Emphasis added.)

We noted that subsequent cases had taken this language as establishing two exceptions to the general rule that compensation is due where a work-related activity causes the aggravation of a preexisting condition. See *Sisbro I*, 327 Ill. App. 3d at 872. For example, in *General Refractories v. Industrial Comm'n*, 255 Ill. App. 3d 925, 930-31 (1994), the appellate court said: "Generally, an employer takes its employees as it finds them, and a preexisting condition does not bar compensation for an injury if the employment was a causative factor. [Citation.] There is an exception to this rule, however, where the employee's health has so deteriorated that any normal, daily activity could have caused the injury, or where the activity engaged in presents risks no greater than that to which the general public is exposed. [Citation.]"

According to the rule applied in *General Refractories* and *Sisbro I*, a claimant who seeks compensation for an alleged work-related aggravation of a preexisting condition cannot recover if either the aggravation was not caused by his work activities or, where causation exists, one or both of the exceptions applies.

In *Sisbro II*, our supreme court held that we erred in characterizing the "normal daily activity" and "no greater risk" factors as exceptions that bar recovery despite the existence of a causal connection between the claimant's employment and his injury. After reviewing the cases upon which *County of Cook* relied in describing the "no greater risk" and "normal daily activity" factors as "limitations" on recovery, the supreme court rejected the two-step process we applied in *Sisbro I*:

> "[These cases] do not stand for the proposition that where a causal connection between work and injury has been established, it can be negated simply because the injury might also have occurred as a result of some 'normal daily activity.' Rather, these cases demonstrate that whether 'any normal daily activity is an overexertion' or whether 'the activity engaged in presented risks no greater than those to which the general public is exposed' are matters to be considered when deciding whether a *sufficient causal connection* between the injury and the employment has been established in the first instance. We have never found a causal connection to exist between work and injury and then, in a further analytical step, denied recovery based on a 'normal daily activity exception' or a 'greater risk exception.' " (Emphasis added.) *Sisbro II*, 207 Ill. 2d at 211-12.

According to the supreme court, a claimant's vulnerability to injury during normal daily activities is not an "exception" that applies to bar recovery despite the existence of a "sufficient causal connection" between work and injury, but instead is a "limitation" on when a "sufficient causal connection" may be found in the first instance. The supreme court denied that it has ever found an injury noncompensable where there existed a "sufficient causal connection" between work and injury, because there is no analytical step beyond the causation inquiry.

Before we apply it to the facts of this case, we explain our understanding of this rule. Although the supreme court implies in *Sisbro II* that the concept of "sufficient causal connection" is no innovation, our research discloses that the phrase appears only in one majority opinion and one dissent before *Sisbro II*. See *Brewster Motor Co. v. Industrial Comm'n*, 36 Ill. 2d 443, 450 (1967); *C.A. Dunham Co. v. Industrial Comm'n*, 16 Ill. 2d 102, 115 (1959) (Klingbiel, J., dissent-

ing). In *Brewster*, the word "sufficient" does not appear until the final, conclusory sentence that states the holding of the court on the issue of causation. See *Brewster*, 36 Ill. 2d at 450 ("In this manner, [the claimant's] employment contributed to his injuries and death, and such contribution constitutes a sufficient causal connection between work and accident within the degree of causation necessary to satisfy the 'arising out of' requirement of our Workmen's Compensation Act"). There is nothing in the remainder of the opinion to suggest that the word was intended as anything but an embellishment. Likewise, the dissenting opinion in *C.A. Dunham*, uses the phrase "sufficient causal connection" in passing while addressing a counterfactual hypothetical and cites no authority to support the inclusion of "sufficient." See *C.A. Dunham*, 16 Ill. 2d at 115 (Klingbiel, J., dissenting) ("I do not mean to imply that had [the employee] been employed by the United Air Lines there would have been a sufficient causal connection with his employment").

■ What makes a cause "sufficient"? If a "sufficient cause" is a cause distinguished by some degree of dominance, then the concept indeed is a novelty in workers' compensation cases because the supreme court has always refused to distinguish among degrees of causation:

> " 'To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor, nor even that it was the principle [*sic*] causative factor, but only that it was a causative factor in the resulting injury.' " *Sershon v. Industrial Comm'n*, 63 Ill. 2d 395, 399, (1976), quoting *Republic Steel Corp. v. Industrial Comm'n*, 26 Ill. 2d 32, 45 (1962).

See also *Jefferson Electric Co. v. Industrial Comm'n*, 64 Ill. 2d 85, 91 (1976) ("[A] work-connected accident need not be the sole, or even the dominant factor causing disability").

*Sisbro II* supplies a specialized definition of "sufficient causal connection" for aggravation cases, partially relieving us of the problems we see in attempting to define the concept in light of established supreme court precedent. According to *Sisbro II*, a work activity is a "sufficient cause" of the aggravation of a preexisting condition if none of the limitations articulated in *County of Cook* apply, that is, if the work activity presented risks greater than those to which the general public is exposed and the claimant's condition was not so deteriorated that his injury could have occurred through normal daily activity. In rejecting the approach we followed in *Sisbro I*, the supreme court held that the factors are "limitations" applied in the course of the causation analysis, not "exceptions" applied after that analysis.

To show that its decisions have always employed the two factors in analyzing whether a "sufficient cause" exists in the first instance, *Sisbro II* discusses three cases decided prior to *County of Cook*: *National Malleable & Steel Castings Co. v. Industrial Comm'n*, 32 Ill. 2d 184 (1965); *Illinois Bell Telephone Co. v. Industrial Comm'n*, 35 Ill. 2d 474 (1966); and *Rock Road Construction Co. v. Industrial Comm'n*, 37 Ill. 2d 123 (1967).[1] In *National Malleable* and *Illinois Bell*, compensation was denied based on both factors. *Rock Road* also recognized the factors but found insufficient facts to support the application of either factor. Significantly, *Sisbro II* does not call into question the results or analyses in these cases, thus reaffirming that compensation will be denied where "the employee's health has so deteriorated that any normal daily activity is an overexertion, or where it is shown that the activity engaged in presented risks no greater than those to which the general public is exposed." *County of Cook*, 69 Ill. 2d at 18.

In *National Malleable*, the employee, who worked as a grinder in a foundry, was found dead in bed from an overnight heart attack. The evidence showed that the employee reported for work at 5 a.m. the day before his death and sometime thereafter reported to the company's first aid department complaining of pain across his chest and in both arms. Later that morning he left work. That afternoon, the employee's wife took him to a hospital where he reported having had chest pains over the previous four-day period. He died sometime that night. A physician who testified in support of the claim for compensation opined that "during the 4-or-5-day period before the alleged date of accident the [employee] showed definite heart disease and that any exertion whatsoever would be harmful and a precipitating factor, even such things as driving to work, going out to visit the doctor, or walking up and down stairs, all of which were done by the [employee]." *National Malleable*, 32 Ill. 2d at 187. The expert concluded "that the cause of death was 'involved' with the [employee's] final work episode." *National Malleable*, 32 Ill. 2d at 187.

The supreme court reversed the award of benefits. The court set forth the applicable law:

> "This court has often held that if a man's heart gives way under the stress of his normal duties and there is medical evidence to establish causal relationship between the disability or death and the work performed, the payment of compensation is in order. [Citations.] We have held this to be the rule even in those instances

---

[1]Although the supreme court states that *County of Cook* relied on all three cases in framing its "limitation" language, *Rock Road* in fact was not cited in *County of Cook*.

where the employee had a previously existing heart condition which is aggravated by a coronary attack while performing physical labor for his employer. [Citations.]" *National Malleable*, 32 Ill. 2d at 187-88.

The court then said:

"Where an employee suffers the onset of a coronary attack at some time prior to reporting for work and his complaints and physical condition are the same prior, on, and subsequent to the date of the alleged occurrence, the mere fact that the employee reported for work on the day in question and left early is not sufficient to establish a causal relationship between his employment and resulting injury. There is no evidence that the initial heart attack bore a relationship to the employment and the proof shows that the condition of the employee was the same before, during and after his brief period at the foundry." *National Malleable*, 32 Ill. 2d at 189.

The court found "no evidence that the [employee] engaged in any physical labor on [the day before his death] but merely that he reported for work." *National Malleable*, 32 Ill. 2d at 189-90. On this ground, the court distinguished *Bruno v. Industrial Comm'n*, 31 Ill. 2d 447 (1964), where, as in *National Malleable*, "there were no eyewitnesses to any duties actually performed but only evidence of the usual duties of [the claimant's] employment," yet, unlike in *National Malleable*, there was "circumstantial evidence that [the claimant] had engaged in physical labor" before his death. *National Malleable*, 32 Ill. 2d at 188. Finding "no Illinois decisions directly on point," *National Malleable* quoted the following remark from a New York case:

" '[W]here, as here, a heart has deteriorated so that any exertion becomes an over-exertion, where the mere circumstance that the employee was engaged in some kind of physical labor is what impels the doctor to testify that his work caused his death, we would have reached a point, if this award were to be upheld, where all that is necessary to sustain an award is that the employee shall have died of heart disease.' " *National Malleable*, 32 Ill. 2d at 189, quoting *Burris v. Lewis*, 2 N.Y.2d 323, 326, 141 N.E.2d 424, 426 (1957).

The court found no causal relationship between the employee's work and his injury.

It takes some probing to discover why *Sisbro II* cited *National Malleable* for the notion that causation analysis does not precede, but actually involves, consideration of the "no greater risk" and "normal daily activity" factors. The express rationale for the denial of compensation in *National Malleable* was based on the nature of the work activity that preceded the employee's death. The court found that this activity did not amount to "physical labor" and hence was not of sufficient intensity to justify a finding of causation. *National*

*Malleable,* 32 Ill. 2d at 188-90. Presumably, *Sisbro II* saw this reasoning as incorporating the "no greater risk" factor even though it was couched in different terms than in later cases.

However, there is no express mention in *National Malleable* of the "normal daily activity" factor, so one must delve more deeply into the opinion to discover where *Sisbro II* saw an application of that factor. Significantly, the physician who testified in support of the claim for compensation opined that "during the 4-or-5-day period before the alleged date of accident the [employee] showed definite heart disease and *that any exertion whatsoever would be harmful and a precipitating factor.*" (Emphasis added.) *National Malleable,* 32 Ill. 2d at 187. Consistent with this, the court adopted the above rule from *Burris* that places decisive weight on the deteriorated nature of an employee's physical condition and his susceptibility to injury during any exertion. See *National Malleable,* 32 Ill. 2d at 189.

We turn to *Burris* itself for a complete understanding of the content of this rule. In *Burris,* the employee collapsed and died of heart failure after assembling wooden frames to serve as molds for a concrete cellar wall. A medical examiner testified that the employee's heart disease was so advanced at the time of his death that any stress or strain would have precipitated his death. The physician testified "that it was not necessarily important to know how [*sic*] heavy weights [the employee] carried while working before his death" because he could even have died at home in bed given his condition. *Burris,* 2 N.Y.2d at 325, 141 N.E.2d at 425. The physician concluded that the employee's death "resulted from previous heart disease, which was a competent producing cause irrespective of whether or not he was subjected to any unusual strain." *Burris,* 2 N.Y.2d at 325, 141 N.E.2d at 425-26. The court reversed the award of compensation, citing the rule that an injury is compensable only if the job activity from which it arose involved "greater exertion than the ordinary wear and tear of life." *Burris,* 2 N.Y.2d at 326, 141 N.E.2d at 426. The court found no evidence that the employee "died from any unusual strain connected with his work." *Burris,* 2 N.Y.2d at 326, 141 N.E.2d at 426. The court also stated:

> "It is evident from *** the testimony of this *** medical witness *** that any exertion would have been an overexertion for this unfortunate man, and that in expressing the opinion that the type of work he was doing precipitated his death, the doctor merely meant that he was engaged in some type of activity, and that any kind of activity was sufficient to that end. We do not have here the situation of a man who is employed in a particularly strenuous job, and where there is evidence that a heart attack has been induced

by some overexertion which is normal to the ordinary course of arduous employment. *** [T]he precipitating cause need not be something more strenuous than the normal performance of the work demanded, provided that the ordinary course of the work was sufficiently strenuous to require more than normal exertion. *But where, as here, a heart has deteriorated so that any exertion becomes an overexertion, where the mere circumstance that the employee was engaged in some kind of physical labor is what impels the doctor to testify that his work caused his death, we would have reached a point, if this award were to be upheld, where all that is necessary to sustain an award is that the employee shall have died of heart disease.* *** Here it is plain that in the opinion of the only physician whose testimony could support the award, death resulted from the circumstance that [the employee] had been subjected to any kind of exertion, even the exertion of merely being alive, so that, in this assistant medical examiner's opinion, death might easily have come during sleep." (Emphasis added.) *Burris*, 2 N.Y.2d at 326-27, 141 N.E.2d at 426.

Significantly, the quoted discussion places equal emphasis on the nature of the work in which the employee was engaged prior to his injury and on his advanced heart disease, which for him made any exertion an overexertion. Therefore, it appears that compensation in *Burris* was denied based on considerations identical to the "no greater risk" and "normal daily activity" factors applied in Illinois cases. The highlighted portion of the analysis, which was later quoted in *National Malleable*, embodies both factors. *National Malleable* evinced approval of the result and rationale in *Burris* by quoting from it. Given *National Malleable*'s emphasis on the advanced state of the employee's heart disease, which according to the testifying physician rendered the employee susceptible to death through any exertion, we conclude that the supreme court, like the court in *Burris*, denied compensation based on both the "no greater risk" and "normal daily activity" factors.

As *Sisbro II* observes, *National Malleable* did not engage in any analysis beyond the issue of causation. However, the "no greater risk" and "normal daily activity" factors nonetheless were applied to deny compensation, indicating that the concept of "sufficient cause" as defined by *Sisbro II* takes into account both factors.

The next case *Sisbro II* examined in its effort to illustrate the concept of "sufficient cause" was *Illinois Bell*. In *Illinois Bell*, a clerical employee with a severely deteriorated heart suffered chest pains at work after walking several blocks to deliver papers to another office. He was sent home on the recommendation of the company physician. He died that night. The supreme court reversed an award of compensa-

tion, finding no causal connection between the employee's work and his injury:

> "The company *** contends that the heart attack from which [the employee] died did not arise from his employment but from natural risks to which all persons with his disability are exposed. We agree. Under the view of the evidence most favorable to claimant's position we can find no proof that [the employee's] duties involved unusual strain, or anything else that would justify attributing the heart attack to his employment. On the day of his death he walked four blocks to deliver some papers and later returned, no doubt hurrying somewhat because of the wind or other weather condition. But he walked on the streets every day in whatever he might be doing, whether on personal errands or occupational ones. *The exertion involved and the risks incurred are nothing more than those to which the general public is equally exposed, and the record in this case shows [the employee] regularly engaged in activities around his home which were at least equally as strenuous as the four-block walk on the day of his death. There is nothing in the facts of this case to show he would not have been equally exposed to the risk of a heart attack entirely apart from his employment. Even the two doctors who testified for the claimant observed that when circumstances were 'appropriate' [the employee] might have a heart attack regardless of his employment.*" (Emphasis added.) *Illinois Bell*, 35 Ill. 2d at 476-77.

*Sisbro II* cited *Illinois Bell* to show that the "no greater risk" and "normal daily activity" factors are considered in determining whether causation exists in the first instance. Indeed, both factors are discussed in the quoted discussion. *Illinois Bell* emphasizes not only the degree of risk involved in the work activity that preceded the employee's death but also the deteriorated condition of his heart, which, the court notes, would have exposed the employee to injury regardless of his employment. *Illinois Bell*'s emphasis on the deteriorated condition of the employee was further shown in its citation to the following principles from *National Malleable*:

> "The mere fact that [the employee] was at work on the day of his heart attack and left early is not sufficient to establish a causal relationship between his employment and his subsequent death, *nor is it enough, where one's heart has deteriorated so that any exertion becomes an overexertion, to merely show that he had engaged in some kind of physical activity before suffering the attack.* [Citation.]" (Emphasis added.) *Illinois Bell*, 35 Ill. 2d at 477.

The last case cited by *Sisbro II* to explain the "limitation" language in *County of Cook* and the concept of "sufficient causal connection" was *Rock Road*. In *Rock Road*, the employee, an asphalt

truck driver, died of a heart attack while returning to his employer's plant after delivering two loads of asphalt. The employee's widow brought a claim for benefits. At the hearing, a physician testified for the claimant that the employee's work activities on the day of his death caused his heart attack. The three physicians who testified for the employer opined that the work activities were not causally related to the employee's death. One of the physicians also testified that the employee's condition would have "continue[d] to deteriorate irrespective of exertion." *Rock Road*, 37 Ill. 2d at 126. Another physician testified that "death was inevitable in [the employee's] case regardless of what he did." *Rock Road*, 37 Ill. 2d at 126.

The supreme court affirmed the arbitrator's award of compensation. The court noted that the general principle that work activity need only be a causative factor in a heart attack for it to be compensable is "limited by the rule that, where one's heart has deteriorated to such an extent that any exertion becomes an over-exertion, it is not sufficient merely to show that the employee has engaged in some job-connected physical activity prior to his attack. [Citations.]" *Rock Road*, 37 Ill. 2d at 127. For this limitation the supreme court cited *Illinois Bell* and *National Malleable*. The court then analyzed as follows:

> "*It seems likely from this record that the ultimate result of decedent's heart condition would have been death at some indeterminate future date. It is, of course, possible that this could have occurred in a situation wholly unrelated to work or exertion. But neither of these circumstances necessarily renders an award of compensation against the manifest weight of the evidence [citations] if it may be legitimately inferred from the evidence before the commission that occupational activity or exertion was in fact a causative factor in hastening [the employee's] death.* [Citations.] Whether [the employee's] condition had progressed to the point where any exertion became an over-exertion, and the death thus noncompensable [citation] was for the commission's determination. The only evidence to this effect is the doubtful inference to be drawn from the disputed and conflicting testimony of the employer's medical witnesses. Moreover, the fact that [the employee's] personal physician advised him that he should not be engaged in the work he did because it was too strenuous points to the opposite conclusion, *i.e.*, that less strenuous work would not have been harmful. Under these circumstances the finding of the Industrial Commission is not against the manifest weight of the evidence. [Citations.]" (Emphasis added.) *Rock Road*, 37 Ill. 2d at 128-29.

In *Sisbro II*, the supreme court quoted the highlighted portions as indicating *Rock Road*'s rejection of the argument that the employee

should not have been awarded compensation because his "condition had so deteriorated that any activity might have precipitated the attack." *Sisbro II*, 207 Ill. 2d at 211. However, immediately after its discussion of *Rock Road*, *Sisbro II* notes that the "normal daily activity" factor is "to be considered when deciding whether a sufficient causal connection between the injury and the employment has been found in the first instance." *Sisbro II*, 207 Ill. 2d at 212. Indeed, *Rock Road*, upon close examination, does not abrogate the factor. *Rock Road* acknowledges in the very next sentence after the highlighted portion that a work-related accident is not compensable where the employee's condition has so deteriorated that any exertion is an overexertion, for in such a situation the exertion involved in the work-related activity cannot be deemed a causal factor in the injury.[2]

Neither *National Malleable*, *Illinois Bell*, nor *Rock Road* uses the term "sufficient cause" or "sufficient causal connection." However, in each of these cases decisive weight is placed on evidence that the employee's physical condition was so deteriorated that an overexertion would result from any exertion, including the exertions involved in normal daily activity.

The relevance of the "normal daily activity" factor was recognized after *Rock Road* in *Board of Trustees of the University of Illinois v. Industrial Comm'n*, 44 Ill. 2d 207 (1969), and *Greater Peoria Mass Transit District v. Industrial Comm'n*, 81 Ill. 2d 38 (1980).

In *Board of Trustees*, the claimant suffered a ruptured disc while turning in his chair upon hearing a noise. The claimant's surgeon testified that, based on the claimant's medical history, "it was reasonable to conclude that the affected disc had degenerated to such a degree prior to the occurrence that normal movement would have caused it to protrude or rupture." *Board of Trustees*, 44 Ill. 2d at 209. Based on this testimony, the supreme held that the claimant's injury was not compensable:

> "There is no evidence here of a causal connection between the [claimant's] employment and the injury. The [claimant] simply turned in his chair and suffered the injury. There was no suggestion that the chair was defective or unusual in any way. The medical evidence was that because of its degenerated condition any simple and normal activity would have caused the [claimant's] disc

---

[2] *Rock Road* is distinguishable on its facts from the present case. In *Rock Road*, the supreme court noted that there was conflicting testimony regarding the extent of the employee's deterioration. Here, there is no such conflict. Dr. Cohen alone addressed the extent of claimant's deterioration, opining that he was a "heart attack waiting to happen."

to rupture. The injury was not caused by a risk incidental to the employment. [Citation.]" *Board of Trustees*, 44 Ill. 2d at 214-15. Thus, compensation was denied due to the claimant's vulnerability to injury during normal daily activity.

In *Greater Peoria,* the claimant, a bus driver, dislocated her shoulder when she lost her balance and fell while bending over to retrieve bus schedules from the floor. She had dislocated her shoulder previously and thereafter was subject to recurrent partial dislocations. The claimant's surgeon testified "that any episode of minor trauma—reaching for a cigarette or combing hair or turning over in bed while asleep—could have caused [claimant's] shoulder to dislocate and that her shoulder was a 'time bomb' which would go off at an unpredictable time." *Greater Peoria*, 81 Ill. 2d at 42. Based on this testimony, the supreme court held that the claimant's injury was not compensable:

> "[C]laimant's doctor testified that her shoulder was a 'time bomb' that could go off at any time and that any normal activity would have precipitated its dislocation. The employer, therefore, merely provided the occasion for its occurrence and did not cause it in any way. Completely absent from the record is any evidence that claimant's work (1) further deteriorated her shoulder, (2) aggravated it, (3) precipitated its dislocation, or (4) accelerated the occasion for its dislocation. (See 1 A. Larson, Workmen's Compensation sec 12.20, and cases therein cited (1978).) There is, in short, no indication from the record that, but for her employment, her shoulder would 'have gone on functioning reasonably well for an indefinite time.' (1 A. Larson, Workmen's Compensation sec. 12.20, at 3–310 (1978).)" *Greater Peoria*, 81 Ill. 2d at 43.

The standard applied in *Greater Peoria* was whether the employee's injury could have occurred regardless of the claimant's employment, that is, through normal daily activity.

*Sisbro II, Board of Trustees,* and *Greater Peoria* all persuade us of the continued vitality of *County of Cook*'s declaration that an injury suffered at work is not compensable "where it is shown the employee's health has so deteriorated that any normal daily activity is an overexertion, or where it is shown that the activity engaged in presented risks no greater than those to which the general public is exposed." *County of Cook*, 69 Ill. 2d at 18.

■ Turning to the facts of this case, we hold that the "normal daily activity" limitation bars compensation. Dr. Cohen, claimant's family physician, opined that claimant's coronary arteries were so occluded that "any activity or no activity could put sufficient stress on the heart to result in a myocardial infarction." Dr. Cohen further testified that claimant was a "heart attack waiting to happen." We

cannot imagine a more compelling case for applying the "normal daily activity" limitation. Dr. Cohen's testimony as to the likelihood of claimant suffering a heart attack regardless of his employment was entirely undisputed. Hence these facts present a far stronger case for the limitation than *Sisbro I* and *Sisbro II*, where only one of the medical experts to testify opined that the claimant would have developed his condition of ill-being eventually through normal daily activity, even though both experts recognized that even minor, ordinary activity could cause the claimant's condition of ill-being. One of our panel who dissented from our holding in *Sisbro I* pointed out in a special concurrence in our previous decision in this case that the facts here present a more compelling scenario than *Sisbro I* and *Sisbro II* for the application of the "normal daily activity" limitation. See *Twice Over Clean*, 337 Ill. App. 3d at 811 (Holdridge, J., specially concurring).

Of course, we are careful to present our conclusion in the analytical framework set forth in *Sisbro II*. We do not hold that claimant proved a causal connection between his employment and his injury and yet deny him compensation because his condition of ill-being would have occurred regardless of his employment. Rather, we hold that, in light of his susceptibility to a heart attack outside of work, he failed in the first instance to prove a "sufficient causal connection" between his work and his injury.

For the foregoing reasons, we reverse the judgments of the circuit court and the Commission.

Reversed.

McCULLOUGH, P.J., and HOFFMAN and HOLDRIDGE, JJ., concur.

JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent. The majority denies compensation to claimant under the profound misapprehension that it followed the "analytical framework set forth in *Sisbro II*." 348 Ill. App. 3d at 652. The reality of the situation, however, is that the majority failed to learn from the errors in *Sisbro I*. Because the majority's disposition is directly in opposition to our Supreme Court's dictates in *Sisbro II*, I must dissent.

In *Sisbro II*, our supreme court reversed the order entered by this court in *Sisbro I* and held there was sufficient evidence in the record to support a finding that claimant's work-related accidental injury to his ankle aggravated or accelerated claimant's preexisting condition, and, thus, workers' compensation was properly awarded by the Com-

mission. Our supreme court specifically found that this court failed to give appropriate deference to the factual findings of the Commission and applied an overly broad interpretation of the "normal daily activity" limitation on recovery in preexisting condition cases. Our supreme court compared and contrasted numerous cases relied upon by the majority herein and ultimately concluded as follows:

"When an employee with a preexisting condition is injured in the course of his employment, serious questions are raised about the genesis of the injury and the resulting disability. The Commission must decide whether there was an accidental injury which arose out of the employment, whether the accidental injury aggravated or accelerated the preexisting condition or whether the preexisting condition alone was the cause of the injury. Generally, these will be factual questions to be resolved by the Commission. However, the Commission's decision must be supported by the record and not based on mere speculation or conjecture. If there is an adequate basis for finding that an occupational activity aggravated or accelerated a preexisting condition, and, thereby, caused the disability, the Commission's award of compensation must be confirmed." *Sisbro II*, 207 Ill. 2d at 215, 797 N.E.2d at 678.

In reaching this conclusion, our supreme court specifically relied on three other cases in which the claimant suffered a heart attack.

*Sisbro II* discussed *National Malleable & Steel Castings Co. v. Industrial Comm'n*, 32 Ill. 2d 184, 204 N.E.2d 748 (1965), *Illinois Bell Telephone Co. v. Industrial Comm'n*, 35 Ill. 2d 474, 220 N.E.2d 435 (1966), and *Rock Road Construction Co. v. Industrial Comm'n*, 37 Ill. 2d 123, 227 N.E.2d 65 (1967). In *National Malleable* and *Illinois Bell*, compensation was denied because the connection between work and the heart attack was too tenuous, while in *Rock Road* compensation was allowed because the evidence allowed for a legitimate inference that the " 'occupational activity or exertion was in fact a causative factor in hastening the decedent's death.' *Rock Road Construction*, 37 Ill. 2d at 128[, 227 N.E.2d at 68]." *Sisbro II*, 207 Ill. 2d at 211, 797 N.E.2d at 676. The *Sisbro II* court pointed out that neither *National Malleable* nor *Illinois Bell* "stand[s] for the proposition that where a causal connection between work and injury has been established, it can be negated simply because the injury might also have occurred as a result of some 'normal daily activity.' " *Sisbro II*, 207 Ill. 2d at 211, 797 N.E.2d at 676. Instead, the court found:

"[T]hese cases demonstrate that whether 'any normal daily activity is an overexertion' or whether 'the activity engaged in presented risks no greater than those to which the general public is exposed' are matters to be considered when deciding whether a sufficient causal connection between the injury and the employment has

been established in the first instance. We have never found a causal connection to exist between work and injury and then, in a further analytical step, denied recovery based on a 'normal daily activity exception' or a 'greater risk exception.' " *Sisbro II*, 207 Ill. 2d at, 211-12, 797 N.E.2d at 676.

Despite our supreme court's instructions in *Sisbro II* to narrow the "normal daily activity" limitation, the majority chooses instead to broaden the limitation to bar compensation in the instant case.

The majority's denial of compensation appears to be based entirely upon Dr. Cohen's responses to questions posed during cross-examination. In response to a hypothetical question, Dr. Cohen admitted that a person with claimant's degree of occlusion (90% blockage) could suffer a heart attack with any level of activity or even no activity. Dr. Cohen also affirmatively responded to the question, "A person with that degree of occlusion is basically a heart attack waiting to happen, would you agree?" The majority opinion hinges upon these two answers and all but ignores the facts of the instant case which show that claimant's duties on the day he suffered the heart attack were extremely physical in nature and performed under severe conditions.

Claimant was hired to remove asbestos from a plant in Minneapolis, Minnesota. Claimant's travel, lodging, and food expenses were paid by the employer. On the day in question, claimant began working at 7 a.m. The temperature outside was approximately five degrees. The disused plant was not heated, and the temperature indoors was only 10 to 15 degrees. During the course of the day, claimant was required to enter a steel bin in which the temperature was even colder than the outside temperature.

On the day in question, claimant removed over 500 large bags of asbestos material. Each bag weighed approximately 40 to 45 pounds. The 500 bags were placed in a commercial Dumpster, which was accessed by walking down several flights of stairs and across 40 to 50 feet outside the building. To make matters worse, claimant was required to wear a full respirator and protective clothing while performing his duties.

At approximately 2:30 p.m., claimant started feeling chest pains. He sat down and rested, and while the pain diminished, it never completely dissipated. Claimant left work at 3:30 p.m. and returned to his motel room. The other workers went to eat, but claimant did not feel like eating. His chest pains eventually worsened. After going to bed, claimant woke up in a cold sweat with severe chest pains. He was taken to the hospital where it was determined that he had sustained a myocardial infarction. Under these circumstances, and in light of our Supreme Court's holding in *Sisbro II*, the majority is flat out wrong to

reverse the Commission's finding of sufficient causal connection between claimant's work and his injury.

Like *Rock Road*, and unlike *National Malleable* and *Illinois Bell*, claimant's occupational activity and exertion were clearly factors in his heart attack. I can find nothing tenuous between claimant's work and heart attack under the facts of the instant case. *Sisbro II* specifically states that the causal connection between work and injury cannot be negated simply because it might have occurred as the result of some normal daily activity. Here, there is clearly an adequate basis for finding that claimant's occupational activity aggravated or accelerated claimant's preexisting heart condition and thereby caused his resulting disability. Accordingly, I would affirm the Commission's award of compensation.