BOYD ELECTRIC, Appellant, v. WILLIAM DEE, Appellee (The Industrial Commission, Defendant).

First District (Illinois Workers' Compensation Commission Division)
No. 1—04—1986WC

Opinion filed March 9, 2005.—Rehearing denied April 4, 2005.

852

Keefe & Associates, L.L.C., of Chicago (Eugene F. Keefe, of counsel), for appellant.

Corti, Freeman & Aleksy, of Chicago (Richard E. Aleksy and Allison M. Cychosz, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Boyd Electric appeals from an order of the circuit court confirming a decision of the Industrial Commission (Commission),[1] awarding the claimant, William Dee, benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2000)). For the reasons that follow, we affirm.

The following facts were established by the testimony and exhibits presented at the arbitration hearing. The claimant testified that he began working for Boyd Electric as a journeyman electrician in July 2000. He was first assigned to work on a hotel construction project where his job entailed installing conduit pipe in the stairwell of a 15-story building. According to the claimant, he was required to carry 20-pound bundles of conduit, drill into concrete blocks on the stairwell, and install the conduit. The claimant stated that, near the end of the hotel project, he noticed that he was limping and felt as if he had "pulled a groin." He did not, however, seek any medical attention for his pain.

In February 2001, Boyd Electric assigned the claimant to work on

---

[1] Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

a new CVS drugstore that was under construction. His job required him to set up the electrical infrastructure in the store, which included installing electrical outlets and overhead lights, cutting and bending conduit pipes, and using a drill to anchor parts needed for installation. The claimant stated that he climbed up and down ladders, sometimes "50 times a day," and also used a motorized power lift to install the infrastructure in the store. According to the claimant, on March 26, 2001, he was on the power lift when he encountered an 80- or 100-pound spool of wire in his path. He testified that, as he was picking it up, he "felt like [his] left foot fell out" and noticed a sharp pain in his abdomen, a feeling he had "never felt before in [his] life." The claimant stated that, prior to this time, he had never had a problem with his left leg or hip. After reporting the incident to a foreman, the claimant continued working that day.

The following day, the claimant went to see his family physician, Dr. Peter Jurek. Dr. Jurek's notes indicate that the claimant complained of left upper leg pain and weakness "x one month." He noted that the pain was worse at night and improved during the course of the day. Dr. Jurek indicated that the claimant's pain became worse after he lifted an 80-pound object at work, and he was barely able to walk "the last few days." Dr. Jurek prescribed Celebrex and released the claimant to work as of March 30, 2001.

After returning to work, the claimant went back to see Dr. Jurek on April 9, 2001. Dr. Jurek's notes of that visit indicate that, since the claimant returned to work, the pain in his upper left leg had become more severe, he complained of pain in his right calf, and he was unable to walk more than a short distance. Dr. Jurek referred the claimant to the Parkview Orthopedic Group (Parkview). The claimant testified that he did not return to work after April 9, 2001.

On April 30, 2001, the claimant went to see Dr. Kevin Luke at Parkview. Dr. Luke's notes of that visit indicate that the claimant felt a pull in his left groin while pulling a heavy coil of wire on March 26, 2001. Dr. Luke diagnosed the claimant as having a left groin and adductor strain. He prescribed Vioxx for the pain and recommended a course of physical therapy.

The claimant next saw Dr. Luke on May 30, 2001. Dr. Luke recommended that the claimant continue with physical therapy. He also scheduled an MRI scan of the claimant's pelvic region, which was done a week later.

On June 13, 2001, Dr. Luke reviewed the results of the MRI scan with the claimant. His notes indicate that the scan showed evidence of edematous changes in the claimant's bilateral femoral heads. Dr. Luke diagnosed the claimant as having a left groin adductor strain and

avascular necrosis. With respect to causation, Dr. Luke stated in his notes: "I do believe that his adductor strain is secondary to his work-related injury. Obviously, his avascular necrotic changes of his bilateral hips are probably not."

When Dr. Luke saw the claimant two weeks later, he noted that the claimant complained of increased discomfort in his left hip and groin area. With respect to the claimant's avascular changes, Dr. Luke opined as follows:

"I am not convinced, nor do I believe that his avascular changes are secondary to a work-related injury. This is prefaced by the fact that it is bilateral in nature. In either case, because of his increasing pain and disability, [the claimant] needs to get this treated."

Dr. Luke placed the claimant on crutches and referred him to Dr. Aaron Rosenberg, an orthopedic surgeon specializing in adult lower extremity reconstruction.

The claimant first saw Dr. Rosenberg on July 12, 2001. His notes state that the claimant had no significant hip problems prior to March 2001, but he subsequently "experienced a relatively sudden onset of left hip pain when he went to squat down and picked up a roll of wire." Dr. Rosenberg reviewed the claimant's medical records and history and conducted a physical examination. Dr. Rosenberg diagnosed the claimant as having avascular necrosis of his right and left hip and recommended a total hip arthroplasty on the left side and a core decompression on the right side. He scheduled the claimant for a total hip arthroplasty for August 20, 2001. On that same date, Dr. Rosenberg wrote a letter to Tarra Benson, a claims adjuster working for Boyd Electric's insurance carrier, in which he expressed his opinion as to causation as follows:

"It is my impression, within a reasonable degree of medical certainty, the [claimant's] left hip complaints are consistent with this avascular necrosis which was most likely not caused by his work injury but certainly was exacerbated by the injury he sustained on March 26, 2001.

Therefore, while his underlying osteonecrosis is not likely due to his injury, his condition was certainly exacerbated by the trauma he sustained while at work on March 26, 2001."

In a letter dated July 20, 2001, Benson requested that Dr. Rosenberg clarify his opinions as to causation. To that end, Dr. Rosenberg noted in a letter dated July 26, 2001, that, with respect to the claimant's avascular necrosis, he was asymptomatic prior to the March 26, 2001, incident. He concluded as follows:

"Therefore, it is my opinion, that based on his history, as well as the natural history of avascular necrosis, this was a preexisting

condition which was exacerbated by the work injury. I certainly do not think the contralateral hip osteonecrosis was in any way caused or exacerbated by this injury. However, it should be known the increase in symptoms which have followed this work injury have caused him to favor the opposite leg which may contribute to progression of his symptoms on the other side."

Benson then inquired whether Dr. Rosenberg's opinion would change in light of Dr. Jurek's March 27, 2001, notes indicating that the claimant had a history of pain for one month prior to the alleged incident. Dr. Rosenberg responded by letter dated August 15, 2001, stating that it was his understanding that the claimant had minimal complaints of hip pain which did not inhibit his ability to work until the incident at work on March 26, 2001. He further explained that it was after the work injury that the claimant's hip pain became exacerbated, thereby causing him pain while walking and limiting his ability to work.

Dr. Rosenberg's deposition testimony which was received into evidence at the arbitration hearing is consistent with the matters contained in his medical notes and the letters to Benson. When asked if his opinion as to causation would have changed if the claimant was symptomatic prior to the date of the incident, he responded, "I guess it would depend on the degree to which he was symptomatic. *** If he had very little discomfort but some discomfort and then he had an injury following which he had more discomfort, I would again say it was exacerbated."

On August 20, 2001, Dr. Rosenberg performed a total left hip replacement on the claimant at Rush-Presbyterian St. Luke's Medical Center. Postoperatively, Dr. Rosenberg instructed the claimant to remain off work.

At the request of Boyd Electric's insurance carrier, Dr. William Dobozi, an orthopedic surgeon, was asked to review the claimant's medical records. Dr. Dobozi disclosed his opinions in a letter dated February 8, 2002, directed to Boyd Electric's insurance carrier, and in a supplemental letter dated April 18, 2002, which he prepared after having examined the claimant. Dr. Dobozi stated that the claimant had reported injuring his left hip at work while lifting a heavy reel of wire on March 26, 2001. It was his opinion that, although the claimant suffered from bilateral avascular necrosis of the hips, the need for surgery on his left hip was not caused or aggravated by his alleged injury at work. In reaching his opinion, Dr. Dobozi relied on Dr. Luke's March 27, 2001, notes in which he reported that the claimant was having pain and weakness in his leg for a month prior to the incident at work. He also reviewed the claimant's MRI scan and noted that

there was no evidence of the claimant's femoral head collapsing. He stated that, when a person has avascular necrosis of the hip and suffers an acute injury to that area, there is a flattening of that area. Dr. Dobozi concluded that the claimant "was on the road" to a total hip replacement in the near future. Dr. Dobozi also disagreed with Dr. Rosenberg's assessment that surgery on the claimant's right hip was necessary. It was his opinion that the claimant's right hip pain was the result of a natural progression of the disease in his hip, and not any injury he sustained at work or due to an overuse of his right hip following the left hip surgery.

On April 26, 2002, Dr. Rosenberg performed a right hip core decompression on the claimant. Dr. Rosenberg's postoperative notes indicate that the claimant continued to complain of pain in his groin area.

As of the date of the arbitration hearing, the claimant stated that, pursuant to Dr. Rosenberg's recommendation, he was scheduled to undergo right hip replacement surgery on January 13, 2003.

Following a hearing pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2000)), an arbitrator issued a decision wherein he found that the claimant had sustained accidental injuries arising out of and in the course of his employment with Boyd Electric and that his condition of ill-being is causally related thereto. In so finding, the arbitrator specifically credited Dr. Rosenberg's opinions as to causation and found Dr. Dobozi's opinions on this matter to be "unpersuasive." The arbitrator awarded the claimant temporary total disability (TTD) benefits in the sum of $866.67 per week for a period of 85$^{3}$/7 weeks, and ordered Boyd Electric to pay $75,847.97 for necessary medical services rendered to the claimant.

Boyd Electric sought a review of the arbitrator's decision before the Commission. With one commissioner dissenting, the Commission affirmed and adopted the arbitrator's decision and remanded the case to the arbitrator for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980). The dissenting commissioner found that the only alleged causation opinion was based on the claimant's subjective testimony that he was asymptomatic before the alleged incident.

Boyd Electric filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. In the caption to the petition, Boyd Electric properly named the Industrial Commission as a party appellee. On June 10, 2004, the circuit court confirmed the Commission's decision.

On July 1, 2004, Boyd Electric filed its notice of appeal from the circuit court's decision. However, it failed to name the Commission as

a party in the notice of appeal. On August 13, 2004, Boyd Electric filed a motion to amend its notice of appeal to cure the omission. Thereafter, the claimant filed a response, objecting and requesting that the appeal be dismissed. On August 30, 2004, Boyd Electric again filed a motion for leave to amend its notice of appeal. On August 31, 2004, this court entered an order: (1) denying as untimely Boyd Electric's motions to amend its notice of appeal; (2) taking with the case the claimant's request that this cause be dismissed for want of jurisdiction; and (3) directing the parties to address, in their respective briefs, the jurisdictional implications of Boyd Electric's failure to name the Commission as a party in its notice of appeal.

Before addressing the issues raised by Boyd Electric, we will address the question of our jurisdiction over the instant appeal. Boyd Electric asserts that, due to its inadvertence, the Commission's name was innocently omitted from the caption in its July 1, 2004, notice of appeal. Again, Boyd Electric asks this court to grant leave to amend its notice of appeal to correct the omission. The claimant responds that Boyd Electric's request in this regard should be denied because it failed to file its motion within the 30-day period allowed by Supreme Court Rule 303(d) (155 Ill. 2d R. 303(d)). For the reasons that follow, we agree with the claimant on this point.

Ordinarily, a party wishing to appeal must file its notice of appeal within 30 days after the entry of a final judgment. 155 Ill. 2d R. 303(a)(1). Supreme Court Rule 303(b)(4) (155 Ill. 2d R. 303(b)(4)) allows this court to grant a party's motion to amend its notice of appeal only if made within the time specified in Rule 303(d) (155 Ill. 2d R. 303(d)), which provides as follows:

"On motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time, accompanied by the proposed notice of appeal and the filing fee, filed in the reviewing court within 30 days after expiration of the time for filing a notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing."

In *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 688, 637 N.E.2d 1085 (1994), the court stated that, after the expiration of the initial 30-day period for filing a notice of appeal and the additional 30 days allowed for an amendment, a reviewing court is without jurisdiction to permit further amendments of the notice of appeal. Here, Boyd Electric filed its motion to amend its notice of appeal on August 13, 2004, four days after the expiration of the extension of time to amend its notice of appeal. Because we lacked jurisdiction to allow Boyd Electric to amend its notice of appeal to include the Commission as a party appellee, we denied its motion as untimely.

The question now becomes whether Boyd Electric's failure to name the Commission as a party appellee in its notice of appeal is a defect which requires us to dismiss this cause for lack of jurisdiction. The Act is silent on the question of whether the Commission is required to be named in a notice of appeal before this court. The only case cited by Boyd Electric which specifically addresses the issue of failing to name a party in the caption to a notice of appeal is *Moenning v. Commonwealth Edison*, 134 Ill. App. 3d 468, 481 N.E.2d 36 (1985).

In *Moenning*, the appellant sought to appeal a decision of the Illinois Commerce Commission (ICC) to the circuit court. The appellant, however, failed to name the ICC as a party in its notice of appeal. The circuit court found that it lacked jurisdiction to entertain the appeal. On appeal, the *Moenning* court was asked to consider whether the failure to name the ICC in the caption of the notice of appeal was a jurisdictional defect. The court noted that the relevant statute, section 68 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 72), set forth the requirements to perfect an appeal to the circuit court; it did not, however, address the specific issue of what parties were required to be named in the caption. The *Moenning* court found that "in the absence of any specific directive in section 68, the appellant could reasonably infer that the ICC did not need to be named in the caption because decisions on orders by the ICC do not come under the Administrative Review Act." *Moenning*, 134 Ill. App. 3d at 470-71. In vacating the circuit court's dismissal order, the court further stated as follows:

> "There is no reason, and no support in rule, statute, or case law, why we should read a jurisdictional requirement like captioning into the statute. To do so would promote form over substance and defeat an otherwise valid notice of appeal. In fact, to read such a requirement into the statue would be contrary to the explicit language of section 68, which confers jurisdiction on the circuit court provided that certain steps are taken, which they were in this case. The purpose of section 68 is to insure that the parties receive timely notice; this was done here, and there is no showing that the ICC was prejudiced in any way." *Moenning*, 134 Ill. App. 3d at 471-72.

The court also considered the ICC's argument that it was a necessary party to the action. It stated that, even assuming *arguendo* that the ICC was a necessary party, the trial court erred in dismissing the appeal because the failure to join an indispensable party does not deprive a court of its jurisdiction over parties that are properly before it. *Moenning*, 134 Ill. App. 3d at 472.

Although, at first glance, the *Moenning* decision appears to be

dispositive of the jurisdictional issue before us, the procedural posture of that case is somewhat distinguishable from the case at hand. First, in this case, unlike in *Moenning*, Boyd Electric properly included the Commission as a party in its petition for review to the circuit court. The issue in this case is whether Boyd Electric was required to name the Commission in its notice of appeal before this court, not the circuit court. Second, section 68 of the Public Utilities Act set forth the specific requirements to perfect an appeal, even though it was silent on the issue of what parties must be included in the caption. Notwithstanding, Boyd Electric maintains that, as in *Moenning*, we should likewise reject a jurisdictional requirement that promotes form over substance. Boyd Electric asserts that the Commission cannot demonstrate that it was prejudiced by the failure to be named in the caption, as it was served with proper and timely notice of the appeal and it has no interest in the outcome of the appeal. Having found no case which addresses the specific issue at hand, we believe that resolution of this question depends on whether the Commission is considered a necessary or nominal party to the action.

A necessary party is defined as " ' "one who has a legal or beneficial interest in the subject matter of the litigation and will be affected by the action of the court." ' [Citations.]" *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 970, 693 N.E.2d 446 (1998). A party is considered necessary when its presence in a lawsuit is required for any of the following reasons: (1) to protect an interest which the absentee party has in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy. *Holzer*, 295 Ill. App. 3d at 970.

We believe that, in this case, the Commission is not a necessary party for any of the three reasons stated above. First, the Commission has no rights or interests in the subject matter of the appeal which could be materially affected. Next, no rules are implicated on appeal which the Commission would need to defend. The only issue on appeal concerns the award of benefits to the claimant. As such, the only parties affected by the outcome are the claimant and Boyd Electric. The Commission will not be prejudiced in any way if it is not named as a party, nor will the claimant be prejudiced by the Commission's absence on appeal. Finally, the Commission's presence is certainly not required for this court to make a complete determination of the controversy. See generally *Holzer*, 295 Ill. App. 3d at 970-75. For the reasons stated herein, we hold that the Commission is not a necessary party to this appeal. See *Environmental Protection Agency v. Pollution Control*

*Board*, 69 Ill. 2d 394, 398, 372 N.E.2d 50 (1977) (the supreme court noting in passing that the Illinois Pollution Control Board is a tribunal "not unlike the Industrial Commission, which is only a nominal party on appeal in workmen's compensation cases"). As a consequence, we find that Boyd Electric's failure to name the Commission in the caption to its notice of appeal is not a defect that requires us to dismiss the appeal for lack of jurisdiction.

We now turn to the substantive issues raised on appeal. Relying on the fact that the claimant reported feeling pain a month prior to the alleged incident on March 26, 2001, and the medical opinions as to causation, Boyd Electric contends that the Commission's findings of an accidental injury arising out of and in the course of the claimant's employment and a causal connection between that event and the claimant's condition of ill-being are both against the manifest weight of the evidence. We disagree.

In a workers' compensation case, a claimant has the burden of proving, by a preponderance of the evidence, all of the elements of his claim. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). In particular, a claimant must establish that he was injured in an accident which arose out of and in the course of his employment (*Stapleton v. Industrial Comm'n*, 282 Ill. App. 3d 12, 15, 668 N.E.2d 15 (1996)), and that a causal relationship exists between his employment and his injury (*Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 63, 541 N.E.2d 665 (1989)).

With respect to preexisting condition cases, our supreme court in *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 204-05, 797 N.E.2d 665 (2003), held:

"[R]ecovery will depend on the [claimant's] ability to show that a work-related accidental injury aggravated or accelerated the preexisting disease such that the employee's current condition of ill-being can be said to have been causally connected to the work-related injury and not simply the result of a normal degenerative process of the preexisting condition. [Citations.]

*** [E]ven though a [claimant] has a preexisting condition which may make him more vulnerable to injury, recovery for an accidental injury will not be denied as long as it can be shown that the employment was also a causative factor."

The question of whether a claimant's disability is attributable solely to a degenerative process of a preexisting condition or to an aggravation or acceleration thereof as a result of an accident is a factual determination to be decided by the Commission. *Sisbro, Inc.*, 207 Ill. 2d at 205. In deciding issues of fact, it is the function of the Commission to determine the weight to be given to the evidence, judge the

credibility of the witnesses, and resolve conflicting medical evidence. *O'Dette*, 79 Ill. 2d at 253. The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

Boyd Electric argues that the record is devoid of any evidence showing that the claimant suffered an unforeseen injury or unexpected traumatic event. It maintains that the claimant "unfortunately suffers from normal sequalae of a personal systemic condition in both hips that is unrelated to trauma or anything occurring at work." In support of its argument in this regard, Boyd Electric points out that: the claimant testified that he sustained pain in his leg and began limping two months prior to the incident; and Dr. Jurek's notes indicate that the claimant could barely walk for the "last few days" and that his pain improved during the course of the day and worsened at night. Relying on these facts and our prior decision in *Twice Over Clean, Inc. v. Industrial Comm'n*, 348 Ill. App. 3d 638, 809 N.E.2d 778 (2004), *appeal allowed*, 214 Ill. 2d 403 (2005), Boyd Electric asserts that the claimant was in the final stages of his disease and, therefore, was an "accident waiting to happen."

■ We find our decision in *Twice Over Clean, Inc.*, to be wholly distinguishable because, in that case, the relevant medical testimony was undisputed, whereas, in this case, we have disputed medical opinions as to causation. Dr. Rosenberg opined that the claimant's avascular necrosis was exacerbated by the work injury he sustained on March 26, 2001. He noted that the claimant had no significant hip problems prior to March 2001, but that he subsequently experienced a sudden onset of left hip pain when he went to pick up a roll of wire at work. When asked by Boyd Electric's insurance carrier whether his opinion would change in light of Dr. Jurek's notes indicating that the claimant had a history of pain for one month predating the incident, Dr. Rosenberg stated that it was his understanding that the claimant had minimal complaints of hip pain which did not inhibit his ability to work until the incident at issue. He further explained that it was after the work injury that the claimant's condition was exacerbated; namely, he experienced pain while walking and his ability to work was limited.

Without question, Drs. Luke and Dobozi had conflicting medical opinions on the issue of causation. The arbitrator, however, in a decision adopted by the Commission, specifically credited Dr. Rosenberg's opinions and found Dr. Dobozi's opinions to be unpersuasive. Although

not specifically stated in his decision, the arbitrator also implicitly rejected Dr. Luke's opinions as to causation. In addition, any inconsistencies in the claimant's account of his onset of pain as compared to the history of injury contained in the medical records, to the extent they exist at all, were known to the arbitrator. As it is the function of the Commission to judge the credibility of witnesses and resolve conflicting evidence (*O'Dette*, 79 Ill. 2d at 253), we are unable to conclude that either the Commission's finding of an accident arising out of and in the course of the claimant's employment or a causal relationship between that event and the claimant's condition of ill-being is against the manifest weight of the evidence. See *Sisbro, Inc.*, 207 Ill. 2d at 215.

Boyd Electric next argues that the Commission's award of benefits "outside the parameters of the Illinois Workers' Compensation Act is a violation of the due process and equal protection rights of this employer as protected by Title I of the Illinois Constitution and the First and Fourteenth Amendments to the United States Constitution." With respect to this argument, Boyd Electric maintains that the Commission's decision, in effect, required it to provide TTD and medical benefits without requiring the claimant to demonstrate that he suffered a "non-fatal accidental injury." It further asserts that the Commission's decision, if enforced, would represent a "taking of property" in contravention of the Constitution. This is the extent of Boyd Electric's constitutional arguments. Having already concluded that the claimant sufficiently demonstrated that he suffered a compensable accidental injury, we further reject Boyd Electric's constitutional arguments.

For the foregoing reasons, we affirm the judgment of the circuit court which confirmed the Commission's decision, and remand the cause back to the Commission for further proceedings.

Affirmed and remanded to the Industrial Commission.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.