(No. 98748.—

TWICE OVER CLEAN, INC., Appellee, v. THE IN-DUSTRIAL COMMISSION *et al.* (Howard Haulk, Appellant).

*Opinion filed March 24, 2005.*

J. Kevin Wolfe and R. Wayne Harvey, of Harvey & Stuckel, Chrtd., of Peoria, for appellant.

Allen C. Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

Eugene F. Keefe, of Chicago, for *amici curiae* Rush University Medical Center *et al.*

JUSTICE KILBRIDE delivered the opinion of the court:

This case is before us again following our supervisory order (188 Ill. 2d R. 383) directing the appellate court to reconsider its opinion setting aside an award of compensation to Howard Haulk (*Twice Over Clean, Inc. v. Industrial Comm'n*, 337 Ill. App. 3d 805 (2003)) in the light of our decision in *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193 (2003). The appellate court vacated its original opinion (348 Ill. App. 3d 638, 639) and again set aside the Industrial Commission's award of compensation to Haulk, holding that "in light of his susceptibility to a heart attack outside of work, he failed in the first instance to prove a 'sufficient causal connection' between his work and his injury." 348 Ill. App. 3d at 652. We granted Haulk's petition for leave to appeal (177 Ill. 2d R. 315). We allowed Rush University Medical Center, United Wisconsin Insurance Company, and IPC International Corporation to file an *amicus curiae* brief in support of Twice Over Clean. 155 Ill. 2d R. 345. We now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

## BACKGROUND

The record reveals that Haulk was employed as a laborer for Twice Over Clean in Peoria, Illinois. He was assigned to an asbestos removal job in Minneapolis, Minnesota, in December 1996. On January 2, 1997, while performing heavy labor, he suffered chest pains. After he finished work, he went to his hotel and did not feel like eating. He again experienced chest pains and broke out in a cold sweat. He was taken by ambulance to Hennepin County Medical Center (the hospital), where he was admitted and diagnosed with an acute inferior myocar-

dial infarction. Upon his release, he returned to Peoria, where he received additional care from his internist and a cardiologist.

Haulk filed an application for adjustment of claim with the Industrial Commission (Commission),[1] seeking compensation for his heart attack. The claim was heard before an arbitrator. The principal disputed issue was whether the injury arose out of and in the course of Haulk's employment.

At the hearing, Haulk testified that his work assignment on January 2, 1997, was to assist in the removal of 500 to 700 bags of asbestos, each weighing 45 to 50 pounds, located on the top floor of an unheated four- to five-story building in downtown Minneapolis. The temperature in the building was approximately five degrees Fahrenheit. Haulk carried the bags down the stairs and outside to a Dumpster located approximately 100 feet from the building, where he had to pile the asbestos bags high in the dumpster. While performing this task, Haulk was required to wear a large, air-pack-driven facial respirator and protective clothing. At about 2:30 p.m., while performing this work, he noticed pains in his chest, neck, and left shoulder. The pains subsided when he sat down and rested for 10 to 15 minutes, but returned when he resumed working. He left work around 4:30 p.m. The pains never stopped entirely, although they were more severe at times. Ultimately, he began having cold sweats and nausea, an ambulance was called, and he was taken to the hospital. Haulk denied experiencing chest pain prior to January 2, 1997.

The hospital records for Haulk's treatment were admitted in evidence. An unsigned resident's history and physical form, dated January 3, 1997, noted that Haulk was evaluated for chest pain beginning while he was "lift-

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

ing items" around 8 p.m. that evening and returning while he was in bed around 10 p.m. An admission data profile, also dated January 3, 1997, signed by the person preparing it, recited that Haulk described getting "chest pain yesterday afternoon while loading a truck," but that it went away. A signed inpatient consultation stated that Haulk presented with an onset of acute chest pain while lifting weight. Narrative notes dated January 3, 1997, signed by a treating physician, referred to Haulk as a patient with "angina x 4 wks." who experienced "severe pain starting at about 10:00 p.m. today." A critical care flow sheet dated January 3, 1997, signed by a nurse, recorded that Haulk had chest pain with exertion in the morning that subsided on its own. Haulk was diagnosed with and treated for acute inferior myocardial infarction. Coronary angiography revealed a 90% obstruction in a portion of the right coronary artery. These records were sent to Haulk's internist in Peoria, Dr. Brian Cohen.

Upon his return to Peoria, Haulk consulted Dr. Cohen, who in turn referred him to a cardiologist, Dr. Frank Gold. Those doctors provided care for Haulk beginning January 16, 1997, and continuing until he was released to return to work on June 30, 1997.

Haulk had recurring chest pain in February 1997, and was admitted by Dr. Cohen to Methodist Medical Center in Peoria, where he was seen in consultation by Dr. Mark Shima. The consultation record was admitted in evidence. Dr. Shima's impression was: "Atypical resting chest discomfort which radiates to the back and the back of neck. Despite this, this is the same discomfort the patient feels that he had in the pre-infarction period of the day or so prior to an inferior infarct occurring in January of 1997 for which he underwent angioplasty at Hennepin County Hospital in Minnesota." Dr. Shima found no evidence of a myocardial infarction on the occasion of this February 1997 consultation.

Two written reports from Dr. Gold were admitted at the hearing. The first, dated January 16, 1997, was a letter to Dr. Cohen, confirming that Haulk clearly sustained a myocardial infarction and was not capable of returning to his duties as a laborer. Dr. Gold stated that, apart from smoking, Haulk had limited risk factors for coronary artery disease. He reported Haulk advised him that he underwent acute salvage angioplasty in Minneapolis, and that the doctors told him "there was a 50% residual stenosis." In the second report, dated April 10, 1997, Dr. Gold opined that Haulk was then totally disabled as a result of a myocardial infarction sustained while working in Minneapolis, Minnesota.

The report of Dr. Cohen, dated December 4, 1998, was admitted at the hearing. In the report, Dr. Cohen wrote: "The myocardial infarction that Howard Haulk, Jr. suffered at 9:00 P.M. on January 2, 1997, in my medical opinion, was precipitated by the heavy lifting that he did all day long at work. He was actually experiencing the chest pain while doing the lifting, and probably was developing his heart attack at that time."

The evidence deposition of Dr. Cohen, taken on March 10, 1999, was admitted at the hearing. Dr. Cohen testified that he was board certified in internal medicine. Prior to January 13, 1997, he had seen Haulk on only two occasions in 1990, when he performed a physical examination and some follow-up studies. The examination revealed no problems. He and Dr. Gold both followed Haulk's progress after January 13, 1997. Dr. Cohen was primarily concerned with risk factors for coronary disease. He prescribed medication for elevated cholesterol and provided care through February 1999.

Dr. Cohen was asked to assume hypothetically that Haulk performed the work duties Haulk described in his testimony under those same conditions. He then was asked whether he had an opinion "based upon a reason-

able degree of medical certainty as to whether the myocardial infarction that Mr. Haulk suffered as indicated in the records from the hospital in Minneapolis might or could have been caused by the physical activity engaged in on January 2nd, 1997." Dr. Cohen responded affirmatively and stated "that activity very likely could have led him to have a heart attack." He further opined, based on a review of enzyme studies taken on January 2 and 3, 1997, that Haulk's heart attack could have occurred around 2 p.m.

On cross-examination, Dr. Cohen conceded the arteriogram taken at the time of his initial workup in Minneapolis, showing a 90% occlusion of the right coronary artery, was "very significant" and that any activity or no activity by a person having that degree of occlusion could put sufficient stress on the heart to result in a myocardial infarction. He testified that "anybody can experience a myocardial infarction at rest, really." He also agreed with the cross-examiner's statement that "a person with that degree of occlusion is basically a heart attack waiting to happen." On redirect, Dr. Cohen stated that physical activity contributes to the risk of myocardial infarction in persons having Haulk's degree of occlusion, and the kind of lifting Haulk was doing in the afternoon is "tremendous stress and causes a very high work load on the heart and the heart muscle."

Twice Over Clean presented the evidence deposition of Dr. Gary N. Wilner of Evanston, Illinois, taken November 15, 1999. Dr. Wilner, who is board certified in both internal medicine and cardiovascular diseases, was engaged by Twice Over Clean to evaluate Haulk's medical records. He did not physically evaluate Haulk. In his opinion, Haulk's work activity was not a factor in his myocardial infarction, based on the enzyme levels he had at the time of his admission. Those levels were within normal limits, indicating the infarction had not occurred

prior to the preceding five or six hours. He admitted on cross-examination that other studies might be found that would support a different conclusion.

The arbitrator found the heart attack arose out of and in the course of Haulk's employment and entered an award in his favor. The Commission affirmed and adopted the arbitrator's decision, with one commissioner dissenting. The circuit court of Peoria County confirmed the Commission's decision. The appellate court reversed, holding the evidence established that Haulk's physician agreed Haulk was a "heart attack waiting to happen" and could have suffered a heart attack even while at rest. Therefore, the normal daily activity exception applied to defeat Haulk's claim. *Twice Over Clean, Inc.*, 337 Ill. App. 3d at 810-11.

Haulk petitioned for leave to appeal to this court. We initially denied leave to appeal, but entered a supervisory order directing the appellate court to reconsider its opinion in the light of our recent pronouncement in *Sisbro. Twice Over Clean, Inc. v. Industrial Comm'n*, 205 Ill. 2d 650 (2003) (supervisory order). The appellate court vacated its opinion and issued a new opinion, again reversing the circuit court's judgment and setting aside the award of the Industrial Commission. 348 Ill. App. 3d at 652. This appeal followed.

## ANALYSIS

In *Sisbro*, we rejected the argument that the "normal daily activity" exception bars recovery when the claimant's physical condition has so deteriorated that the condition of ill-being could have been produced by normal daily activity, despite a causal connection between the work and the condition. *Sisbro*, 207 Ill. 2d at 208-09. Instead, we held "whether 'any normal daily activity is an overexertion' or whether 'the activity engaged in presented risks no greater than those to which the general public is exposed' are matters to be considered

when deciding whether a sufficient causal connection between the injury and the employment has been established in the first instance." *Sisbro*, 207 Ill. 2d at 211-12. We observed this court has never initially found a causal connection to exist between work and injury and then, as a further analytical step, denied recovery based on a " 'normal daily activity exception.' " *Sisbro*, 207 Ill. 2d at 212. We then analyzed the evidence of record and concluded the manifest weight of the evidence supported the Commission's decision awarding compensation, despite testimony by respondent's expert witness that claimant's condition was the result of the normal degenerative process of his preexisting diabetic condition. *Sisbro*, 207 Ill. 2d at 215. We held:

> "When an employee with a preexisting condition is injured in the course of his employment, serious questions are raised about the genesis of the injury and the resulting disability. The Commission must decide whether there was an accidental injury which arose out of the employment, whether the accidental injury aggravated or accelerated the preexisting condition or whether the preexisting condition alone was the cause of the injury. \*\*\* However, the Commission's decision must be supported by the record and not based on mere speculation or conjecture. If there is an adequate basis for finding that an occupational activity aggravated or accelerated a preexisting condition, and, thereby, caused the disability, the Commission's award of compensation must be confirmed." *Sisbro*, 207 Ill. 2d at 215.

From our review of the record, we then determined that a legitimate inference arose from the evidence before the Commission that the claimant's occupational activity was a causative factor in hastening the onset of his disabling condition. Accordingly, we confirmed the Commission's award of compensation. *Sisbro*, 207 Ill. 2d at 215.

*Sisbro* established the standard for reviewing the Commission's findings where a preexisting condition may

be a cause of the disability. Thus, we will apply that standard in determining whether the record supports a legitimate inference that Haulk's occupational activity was a causative factor in hastening the onset of his disabling myocardial infarction, considering as a factor the preexisting 90% occlusion of his right coronary artery and the likelihood his heart attack could have occurred even without activity. The Commission is entitled to draw reasonable inferences from the evidence, and we will not disregard those inferences unless the Commission's decision is against the manifest weight of the evidence. *City of Des Plaines v. Industrial Comm'n*, 95 Ill. 2d 83, 90 (1983).

Here, the appellate court majority held the normal daily activity limitation bars compensation, based entirely on the admission of Haulk's treating expert, Dr. Cohen, that " 'any activity or no activity could put sufficient stress on the heart to result in a myocardial infarction' " and his agreement with the cross-examiner's statement that the claimant was a " 'heart attack waiting to happen.' " 348 Ill. App. 3d at 651-52. As the dissent in the appellate court points out, however, the majority made no reference to the extensive testimony establishing that Haulk's symptoms began during his performance of heavy labor under extreme temperature conditions. 348 Ill. App. 3d at 654 (Goldenhersh, J., dissenting). The majority further ignored Dr. Cohen's testimony that physical activity contributes to the risk of heart attack in persons having Haulk's degree of coronary artery occlusion, and that the heavy labor he was performing when his symptoms began "is tremendous stress and causes a very high work load on the heart and heart muscle."

The appellate court majority held that "in light of his susceptibility to a heart attack outside of work, he failed in the first instance to prove a 'sufficient causal connec-

tion' between his work and his injury." 348 Ill. App. 3d at 652. This conclusion completely ignores competent testimony in the record establishing that Haulk's work activity contributed to his risk of heart attack and that his symptoms began while he was performing tremendously stressful heavy labor. From this testimony a reasonable inference arises that the work activity was a contributing cause of the heart attack, even considering the 90% occlusion of a portion of Haulk's right coronary artery. Thus, the Commission's determination that a sufficient causal connection was demonstrated is not against the manifest weight of the evidence. If a causal connection between the work activity and the injury is shown by competent testimony, no "limitation" or "exception" to compensation can be imposed to defeat a right to recovery.

In *Rock Road Construction Co. v. Industrial Comm'n*, 37 Ill. 2d 123 (1967), we affirmed an award of compensation for a fatal heart attack. The decedent, an asphalt truck driver, was found dead in his truck after the truck went out of control, lightly struck a guardrail, and came to rest. He had previously suffered two myocardial infarctions, carried nitroglycerin pills, and cold weather bothered him. *Rock Road*, 37 Ill. 2d at 125-26. The record established that the fatal heart attack occurred shortly after the decedent finished rolling up and down his tarpaulin and dumping a load of asphalt. *Rock Road*, 37 Ill. 2d at 127-28. Conflicting expert medical testimony was offered, one expert supporting the existence of a causal relationship between the work activity and the heart attack, and three others denying any causal connection. One of the experts believed decedent's death was inevitable, regardless of his work activity. *Rock Road*, 37 Ill. 2d at 126. We observed it was likely that the ultimate result of decedent's heart condition would have been death at some indeterminate future date, and pos-

sibly occurring in a situation wholly unrelated to work or exertion. Nevertheless, we found the Commission's finding of compensable injury was not against the manifest weight of the evidence, noting conflicting evidence of the extent of deterioration of the decedent's condition. *Rock Road*, 37 Ill. 2d at 128.

Similarly, in *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10 (1977), we confirmed an award of compensation for a fatal heart attack when the victim had a prior history of myocardial infarction and died following a period of an unusually busy workload in his office. We held the employee need only prove that some act or phase of the employment was a causative factor of the resulting injury, explaining that "[t]he mere fact that an employee might have suffered a fatal heart attack, even if not working, is immaterial." *County of Cook*, 69 Ill. 2d at 17-18.

We acknowledged the limitation that compensation will be denied when it is shown that the employee's health has so deteriorated that any normal daily activity is an overexertion, but stated the application of this limitation presented a question of fact for the Commission. *County of Cook*, 69 Ill. 2d at 18.

As in *Rock Road*, the record in this case raised a reasonable likelihood that Haulk's heart attack was inevitable and could have occurred in circumstances unrelated to work activities. The testimony of Dr. Cohen, however, also provided a reasonable basis for the inference that Haulk's heavy labor put extreme stress on his heart, and this stress was in fact a cause of his myocardial infarction. Under the standard we announced in *Sisbro*, it was the Commission's function to decide whether, considering the extent of Haulk's right coronary artery occlusion and its predicted effect, his preexisting condition was aggravated or accelerated by the work activity, thus sufficiently establishing a causal relationship between the work activity and the injury.

Twice Over Clean concedes in its brief that if Haulk's history of the onset of symptoms is accurate, then Dr. Cohen's opinion on causal connection based on that history had adequate foundation and is entitled to be given weight by the trier of fact. Twice Over Clean also concedes in its brief that if Haulk's testimony is accurate, the arbitrator's reliance on that history is supported by the manifest weight of the evidence.

Twice Over Clean claims the history testified to by Haulk is inaccurate because it conflicts with his description of the onset of symptoms given to hospital personnel at the time of his admission. Twice Over Clean contends those descriptions were contemporaneous with Haulk's January 2, 1997, cardiac event and, thus, were made at a time when the desire for proper diagnosis and treatment outweighed any motive to testify falsely for gain. Accordingly, Twice Over Clean argues Haulk's testimony contradicting the hospital records should be disregarded.

In *Horath v. Industrial Comm'n*, 96 Ill. 2d 349 (1983), this court held the Commission's decision denying compensation was not against the manifest weight of the evidence, despite the undisputed expert medical testimony establishing a causal connection between the injury and the claimant's disability. The Commission's opinion noted the claimant gave a different account of his symptoms to treating physicians immediately after the injury than he gave to the doctor who testified at the hearing. *Horath*, 96 Ill. 2d at 356. We held the finding regarding causation involved the credibility of the claimant. The assessment of credibility is a function of the Commission, not the reviewing court. Thus, the Commission did not err in rejecting medical opinions based on testimony found not credible. *Horath*, 96 Ill. 2d at 356-57.

It is true, as Twice Over Clean argues, that some of the descriptions in the medical records reflect a different

account of the onset of symptoms than Haulk's testimony before the arbitrator, particularly as to timing. However, the nature and progression of the symptoms as described in both the records and Haulk's testimony are similar. Only the record indicating the attack was preceded by intermittent chest pain for four weeks sharply contradicts Haulk's denial of prior chest pain in his testimony. The hypothetical question posed to Dr. Cohen did not, however, include an assumption that Haulk had no prior chest pain. In addition, Dr. Cohen was asked on cross-examination the significance of intermittent chest pain for a period of about a month. He stated it was consistent with stable angina, a symptom of coronary artery disease, but added that other sources of chest pain, including heartburn and muscle strain can mimic angina. Regardless of whether Haulk had prior intermittent pain owing to heart disease or some other cause, it is undisputed that Haulk's right coronary artery occlusion preceded his heart attack.

We cannot say, based on this record, that the arbitrator's acceptance of Haulk's testimony is without foundation or based on speculation and conjecture. There was, accordingly, a reasonable basis for acceptance of Dr. Cohen's opinion based on that testimony. We hold, therefore, that the decision of the Commission is not against the manifest weight of the evidence.

## CONCLUSION

There is an adequate basis in the record to conclude that the work activity described by Haulk aggravated or accelerated his preexisting coronary artery disease and was, accordingly, a cause of the myocardial infarction resulting in his disability. The "normal daily activity limitation," while relevant to the question of causation, cannot be applied as a matter of law to defeat Haulk's claim. It was, therefore, error for the appellate court to reverse the judgment of the circuit court and set aside

the decision of the Commission on the ground that Haulk failed to prove a sufficient causal connection between his work and the injury because of his susceptibility to a heart attack outside of work. Accordingly, we reverse the appellate court's judgment and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*