PAMELA SWARTZ, Widow of Ernest Swartz, Deceased, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Schneider Transport, Inc., Appellee).

Third District (Illinois Workers' Compensation Commission Division)
No. 3—04—0800WC

Opinion filed October 4, 2005.—Rehearing denied November 8, 2005.

HOLDRIDGE, J., dissenting, joined by GOLDENHERSH, J.

Emmanuel F. Guyon, of Streator, for appellant.

Jeffrey B. Huebsch, of Power & Cronin, Ltd., of Oak Brook, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On February 11, 2000, decedent, Ernest Swartz, suffered a cardiac event and died while working for employer, Schneider Transport, Inc. On April 13, 2000, decedent's wife, Pamela Swartz (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)) seeking compensation for decedent's death. Following a hearing, the arbitrator found decedent sustained fatal injuries as the result of an accident that arose out of and in the course of his employment. The arbitrator awarded benefits. Employer sought review of the arbitrator's decision with the Industrial Commission (Commission)[1].

On January 16, 2004, the Commission concluded that claimant failed to prove decedent's death arose out of and in the course of his employment and reversed the arbitrator's decision. Claimant sought judicial review in the circuit court of La Salle County and the court confirmed the Commission's decision. This appeal followed.

Decedent was 53 years old at the time of his death and had worked for employer as an over-the-road truck driver for nearly 30 years. On February 11, 2000, he was driving his truck on a California interstate when he suffered some type of cardiac event. A witness observed decedent's truck move slowly to the left lane of the interstate and then veer sharply toward the right and off the roadway. The witness stopped to assist decedent and found him unconscious and not breathing. All efforts to resuscitate decedent failed and he died.

Decedent had been traveling approximately 30 miles per hour, at night, in moderate traffic, with a thin layer of snow and slush covering the roadway. There was no indication he tried to prevent his truck from leaving the road or that he attempted to avoid an accident by applying his breaks. An autopsy revealed decedent's only external injuries were minor superficial abrasions. All of his internal organs were normal, except for his heart, which was markedly enlarged. Additionally, there was severe narrowing of his major coronary arteries in the range of 75% and 90%.

A representative of employer characterized decedent as a good employee whose work performance was excellent. She testified he received an award for safe driving and had driven at least 3 million miles without having a preventable accident. Further, she stated decedent enjoyed driving out West and "frequently asked for loads out that way."

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

Both claimant and employer relied on the expert opinions of highly credentialed cardiologists to determine whether decedent's death was causally connected to his employment. After reviewing decedent's medical history, each expert found the presence of several risk factors that predisposed decedent to the development of a sudden and unpredictable cardiac event. Such factors included his obesity, diabetes, hypertension, family history of cardiac death, sex, and age.

Claimant's expert, Dr. Masoor Kamalesh, defined a "cardiac event" as anything that causes a problem with the functioning of the heart. He stated that although the cardiac event causing decedent's death could have occurred on its own at any time, statistically, it is more likely that it was precipitated by stress. Specifically, Dr. Kamalesh concluded that decedent was under stress because he was driving; however, he conceded that such stress could have been the same type of stress any individual would experience when driving a vehicle. Additionally, he could not quantify decedent's level of stress immediately prior to his death and stated it would depend upon the decedent's ability, age, and experience.

The testimony of employer's expert, Dr. Dan Fintel, was similar, in most respects, to that of claimant's expert. Dr. Fintel also believed decedent suffered a cardiac event but, unlike claimant's expert, he did not believe decedent's driving exposed him to the type of severe stress that could be a causal factor of a cardiac event. Instead, he determined that decedent's employment bore absolutely no relation to his death and concluded death was inevitable and could have occurred at any time with any activity.

On May 12, 2003, the arbitrator issued a decision finding decedent was fatally injured as the result of an accident arising out of and in the course of his employment. He concluded that, as a truck driver, decedent was exposed to greater levels of stress than that to which the general public is generally exposed. The arbitrator then awarded claimant medical expenses, funeral expenses, and compensation pursuant to section 7(a) of the Act (820 ILCS 305/7(a) (West 1998)). Employer sought review with the Commission.

On January 16, 2004, the Commission concluded decedent's death did not arise out of his employment and reversed the arbitrator's decision. Noting the testimony of Dr. Kamalesh, it found no indication that, because of his employment, decedent was under stress greater than that to which the general public is ordinarily exposed. Based upon evidence of decedent's advanced cardiac disease and his exposure to only minimal stress as described by Dr. Kamalesh, the Commission determined "[i]f there was stress associated with decedent's driving, *** it was legally insufficient to warrant compensation." It further

stated decedent's condition was so far advanced that any physical exertion on his part would have been an overexertion. Finally, the Commission adopted the opinions of employer's expert, Dr. Fintel, to the extent that they diverged with those of Dr. Kamalesh.

On February 6, 2004, claimant filed a petition for judicial review. On October 15, 2004, the circuit court confirmed the Commission's decision. This appeal followed.

Claimant argues the Commission's reversal of the arbitrator's decision was against the manifest weight of the evidence. Specifically, claimant contends she successfully proved the presence of a causal connection between decedent's employment and the fatal cardiac event that ended his life.

■ To obtain compensation under the Act, a claimant must prove, by a preponderance of the evidence, that he suffered an injury that arose out of and in the course of employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203, 797 N.E.2d 665, 671 (2003). For a finding that an injury "arose out of" employment, the injury must have "had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 672. A claimant with a preexisting condition that makes him more vulnerable to injury may obtain compensation under the Act so long as employment was a causative factor of his accidental injury. *Sisbro*, 207 Ill. 2d at 205, 797 N.E.2d at 672-73.

■ Whether a causal connection exists between an injury and employment is a question of fact for the Commission to decide, and its decision will not be overturned unless it is against the manifest weight of the evidence. *Certi-Serve, Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244, 461 N.E.2d 954, 958 (1984). A finding of fact is against the manifest weight of the evidence if the opposite conclusion is clearly apparent. *Boyd Electric v. Dee*, 356 Ill. App. 3d 851, 861, 826 N.E.2d 493, 501 (2005). Additionally, the resolution of conflicts in medical opinions or testimony is within the province of the Commission and, again, its findings will not be disturbed unless contrary to the manifest weight of the evidence. *Sisbro*, 207 Ill. 2d at 206, 797 N.E.2d at 673.

The supreme court has rejected the argument that "where a causal connection between work and injury has been established, it can be negated simply because the injury might also have occurred as a result of some 'normal daily activity.'" *Sisbro*, 207 Ill. 2d at 211, 797 N.E.2d at 676. Instead, whether an injured employee's health has deteriorated so that any normal daily activity is an overexertion or whether the work-related activity engaged in presents risks no greater than those to which the general public is exposed are factors to be considered

when determining whether a sufficient causal connection between employment and an injury has been established. *Sisbro*, 207 Ill. 2d at 211-12, 797 N.E.2d at 676.

In this case, although decedent did not suffer a heart attack, he experienced some type of cardiac event resulting in his death. The question before the Commission was whether some aspect of decedent's employment was a causative factor in that event. Relying on the opinions and testimonies of both Dr. Kamalesh and Dr. Fintel, the Commission determined it was not a causative factor. There is evidence in the record to support the Commission's finding of no causal connection.

Each expert testified decedent's cardiac event could have occurred on its own at any time. Although Dr. Kamalesh concluded decedent's cardiac event was most likely precipitated by the stress of driving, Dr. Fintel determined that decedent was not exposed to the type of severe stress necessary to be a causative factor for a cardiac event. The Commission expressly stated it adopted the testimony of Dr. Fintel to the extent it conflicted with that of Dr. Kamalesh.

As stated, the resolution of such conflicts was within the province of the Commission and it does not appear from the record that its decision was erroneous. The Commission noted that, although Dr. Kamalesh believed decedent's cardiac event was precipitated by driving stress, he did not describe that stress as being unique to decedent's employment but, instead, as the same type any individual would experience when driving.

The Commission also found decedent's condition was so advanced that any exertion on his part would have been an overexertion leading to a cardiac event. Support for this conclusion can also be found in the record. Particularly, Dr. Fintel believed decedent's heart condition was so far advanced that a cardiac event was inevitable and could have occurred anywhere at any time. Dr. Fintel's opinion is supported by decedent's autopsy report, which noted that his heart was markedly enlarged and his major coronary arteries were significantly narrowed by 75% and 90%. Further, after reviewing decedent's medical history, both experts found several fatal-cardiac-event risk factors, including obesity, diabetes, hypertension, a family history of cardiac death, sex, and age.

In *Sisbro*, 207 Ill. 2d at 202, 797 N.E.2d at 671, the Commission awarded the claimant compensation and the appellate court reversed, finding that after determining a causal connection between work and injury had been established, both the arbitrator and the Commission should have considered whether the "normal daily activity exception" applied to bar compensation. The supreme court reversed the appel-

late court's decision stating that it had "never found a causal connection to exist between work and injury and then, in a further analytical step, denied recovery based on a 'normal daily activity exception' or a 'greater risk exception.' " *Sisbro*, 207 Ill. 2d at 212, 797 N.E.2d at 676. Instead, it ruled that these "exceptions" were really factors to be considered when determining whether a causal connection had been established. *Sisbro*, 207 Ill. 2d at 211-12, 797 N.E.2d at 676.

In *Twice Over Clean, Inc. v. Industrial Comm'n*, 214 Ill. 2d 403, 827 N.E.2d 409 (2005), the supreme court used the standards applied in *Sisbro* to determine whether work was a causative factor of the claimant's heart attack. In that case, the Commission found the existence of a causal connection between work and injury and awarded benefits. *Twice Over Clean*, 214 Ill. 2d at 410, 827 N.E.2d at 412. The appellate court reversed, stating that because of the claimant's susceptibility to a heart attack, he failed to prove a sufficient causal connection between work and his injury. *Twice Over Clean*, 214 Ill. 2d at 410, 827 N.E.2d at 412. The supreme court then reversed the appellate court, finding the Commission's determination that a sufficient causal connection was demonstrated was not against the manifest weight of the evidence. *Twice Over Clean*, 214 Ill. 2d at 413, 827 N.E.2d at 414.

In *Sisbro*, the supreme court stated:

"[A] reviewing court must not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn, nor should a court substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence. *Parro v. Industrial Comm'n*, 167 Ill. 2d 385, 396 (1995); *Castaneda v. Industrial Comm'n*, 97 Ill. 2d 338, 341 (1983). '[T]o the extent that the medical testimony might be construed as conflicting, it is well established that resolution of such conflicts falls within the province of the Commission, and its findings will not be reversed unless contrary to the manifest weight of the evidence.' *Caterpillar Tractor Co. v. Industrial Comm'n*, 92 Ill. 2d at 37." *Sisbro*, 207 Ill. 2d at 206, 797 N.E.2d at 273.

Here, the Commission never found a causal connection had been established nor did it impermissibly apply an "exception" to defeat recovery. Instead it considered appropriate factors, weighed the evidence, and relied upon the medical testimony it found most credible. Unlike the appellate courts in both *Sisbro* and *Twice Over Clean*, we are affirming the Commission's decision.

The Commission found no causal connection existed between decedent's employment and his fatal cardiac event. It did not find a

causal connection had been established and then impermissibly apply an "exception" to defeat recovery. The Commission weighed the evidence and relied upon the medical testimony it found most credible. The opposite conclusion is not clearly apparent. The Commission's decision is not against the manifest weight of the evidence.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

HOFFMAN and CALLUM, JJ., concur.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent from the majority's disposition. The Commission's written order reads:

"[I]n *Sisbro, Inc. v. Ind. Comm.* (2003), 207 Ill. 2d 193[,] 797 N.E.2d 665[,] 278 Ill. Dec. 70, the Court, citing *Board of Trustees of the University of Illinois v. Ind. Comm.* (1969), 44 Ill. 2d 207, 254 N.E.2d 522, approved of the principle that where the medical evidence establishes that a physical condition is so degenerated that any simple and normal activity would have caused the injury at issue, then such injury does not arise from a risk incidental to the employment."

However, in *Sisbro* the supreme court never cited *Board of Trustees*, and it did not approve the so-called "normal daily activity exception." Indeed the court declared that the "exception" will *not* defeat a claim if causation otherwise exists. For causation to otherwise exist, the employee's work need only be *a* causative factor in the resulting condition of ill-being. *Sisbro*, 207 Ill. 2d at 205.

In the crux of its order, the Commission continued: "If there was stress associated with the decedent's driving, the Commission finds it was legally insufficient to warrant compensation." The Commission then explained its finding: "Combining Petitioner's advanced cardiac disease with the minimal stress described by Dr. Kamalesh indicates that *if such stress was a cause* that *Petitioner's heart disease was so advanced that any exertion was an overexertion.*" (Emphasis added.) This language reflects the standard that was overturned by the supreme court in *Sisbro*. Thus, I believe the Commission erred as a matter of law. I would reverse and remand to the Commission for reconsideration of Swartz's claim under proper legal principles.

GOLDENHERSH, J., joins this dissent.